**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| DIANA SHEARER AND JEFF SHEARER, | : | No. 93 MAP 2016 |
| | : | |
| Appellants | : | Appeal from the Order of the Superior |
| | : | Court dated March 9, 2016 at No. 665 |
| | : | MDA 2015 affirming the order of the |
| v. | : | Court of Common Pleas of Lebanon |
| | : | County, Civil Division, dated March 16, |
| | : | 2015, exited march 17, 2015 at No. |
| SCOTT HAFER AND PAULETTE FORD, | : | 2012-01286 |
| | : | |
| Appellees | : | ARGUED:  May 9, 2017 |

**OPINION**

**JUSTICE TODD**                                        **DECIDED:  January 18, 2018**

In this appeal by allowance, we granted allocatur to consider, *inter alia*, the collateral order doctrine and whether a plaintiff in a civil personal injury action has the right to have counsel present and to record a neuropsychological examination of that plaintiff by a defendant's neuropsychologist under Pennsylvania Rule of Civil Procedure 4010.  For the reasons set forth below, we find that Appellants have not satisfied the collateral order doctrine, and, thus, we quash the present appeal as an unauthorized interlocutory appeal, vacate the order of the Superior Court, and remand the matter to the court of common pleas for further proceedings.

The facts underlying this matter are not in dispute.  On July 15, 2010, Appellee Scott Hafer was operating a motor vehicle owned by his mother, Appellee Paulette Ford.  Appellant Diana Shearer (hereinafter "Mrs. Shearer") alleged that Hafer pulled his vehicle into the path of the vehicle that she was driving, causing an accident.  As a

result of the collision, Mrs. Shearer and her husband Jeff Shearer (collectively, "Appellants") commenced a personal injury action against Hafer and Ford (collectively, "Appellees") in the Lebanon County Court of Common Pleas. Appellants' claims included damages for cognitive harm to Mrs. Shearer caused by the accident, including a closed head injury that resulted in headaches, cognitive impairment, and memory deficits. In preparation for trial, Appellants hired a neuropsychologist, Dr. Paul Eslinger, who was associated with the Hershey Medical Center, to perform a cognitive evaluation. This evaluation, which employed standardized testing procedures, was conducted without Appellants' counsel or any other third party present.

In response to the evaluation, Appellees hired Dr. Victor Malatesta, also a neuropsychologist, to perform an independent neuropsychological evaluation as part of their defense. Appellants did not oppose the request for an independent neuropsychological examination, but demanded that the evaluation be audiotaped, and that their counsel, or other representative, be present during all stages of the examination.

Upon learning of Appellants' preconditions, Dr. Malatesta objected based on asserted ethical grounds, and because he believed such observation could result in the introduction of bias to the process, distortion of the data, and distraction of Mrs. Shearer. Specifically, he claimed that he was bound by the ethical principles of psychologists and the Code of Conduct of the American Psychological Association ("APA") and the National Academy of Neuropsychology ("NAN") to protect the integrity of the examination and the security of the test materials. Dr. Malatesta indicated, however, that, as a compromise, he would permit Appellants' counsel to be present during the interview portion of the examination, but would not permit the presence of counsel or audiotaping during the standardized testing phase of his evaluation.

Appellants' counsel rejected the doctor's proposed compromise and sought the trial court's intervention. Following briefing by both parties, including additional information concerning the alleged practical and ethical restraints on the presence of third parties, the trial court entered an order granting Appellees' request for a protective order; however, the court stipulated that Appellants' counsel could be present during the preliminary interview phase of the exam, but that no individual would be permitted in the evaluation room with Mrs. Shearer and the doctor during the standardized test, nor could the evaluation be recorded. The trial court reached this determination after considering Pennsylvania Rule of Civil Procedure 4010, which, as we discuss below, governs defense requested physical and mental examinations, and provides that the person to be examined shall have the right to have counsel or other representative present during an examination, as well as Pennsylvania Rule of Civil Procedure 4012, which allows for protective orders, for good cause shown, to protect a party or person from whom discovery is sought from unreasonable conduct.

Appellants moved for reconsideration of the trial court's order, and for certification of the matter as appealable pursuant to Pa.R.A.P. 1311(b) (concerning interlocutory appeals by permission). The trial court denied the motions, and Appellants appealed to the Superior Court.[1]

A three-judge panel of the Superior Court affirmed the trial court's order. *Shearer v. Hafer*, 135 A.3d 637 (Pa. Super. 2016). Writing for the court, Judge Jack Panella first considered whether the court had jurisdiction under the collateral order doctrine. *See* Pa.R.A.P. 313(b). The court recognized that discovery orders generally are deemed

---

[1] By order dated May 12, 2015, the Superior Court directed Appellants to show cause why the appeal should not be quashed as interlocutory. Following Appellees' response, the court allowed the appeal to proceed.

interlocutory, and not immediately appealable, because they do not finally dispose of the litigation; however, the court recognized that, pursuant to Rule 313, a non-final order may be reviewed if: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that, if review is postponed until final judgment in the case, the claim will be irreparably lost. The Superior Court reasoned that the order granting the protective order prohibiting the presence of third parties during the neuropsychological exam was separable from, and collateral to, the main cause of action; that any matter implicating a litigant's right to have counsel present is too important to be denied review; and that, if the question presented were postponed until final judgment, Appellants' claim concerning their right to have counsel present would be irreparably lost. Accordingly, the court found the order was a collateral order pursuant to Rule 313.

Proceeding to the merits of the appeal, the Superior Court examined Pa.R.C.P. 4010, which pertains to the physical and mental examination of persons, and was amended in 1998 to explicitly include the examinee's right to have counsel present during such examination. The Rule provides, in relevant part, that a person "to be examined **shall** have the right to have counsel or other representative present during the examination," and that "[t]he party who is being examined . . . may have made upon reasonable notice and at the party's expense a stenographic or audio recording of the examination." Pa.R.C.P. 4010(a)(4), (a)(5) (emphasis added). The court rejected Appellants' argument that the plain language of Rule 4010, granting the right to have counsel present during the examination, is absolute. Rather, the court reasoned that, while use of the term "shall" is usually mandatory, it may nevertheless be discretionary depending upon the intent of the drafter of the rule, and that such intent is discerned from considering various factors of statutory construction.

The Superior Court next looked to Pa.R.C.P. 4012, concerning protective orders, and reasoned that Rule 4012 was intended to give the trial court the discretion to issue protective orders in various discovery scenarios, including the power to limit the number of individuals present. Thus, absent any indication that Rule 4010 was intended to curb the powers granted by Rule 4012, the panel concluded the trial court's power to issue protective orders expressly encompasses the ability to limit the number of individuals present during all discovery, including psychological examinations. *Shearer*, 135 A.3d at 643-44.

The court went on to conclude, however, that Rule 4012 does not empower a trial court to issue protective orders *carte blanche*, and that the rule places on the party seeking the protective order the burden of showing "good cause." To determine what constitutes "good cause," the court looked to its *en banc* decision in *Dougherty v. Heller*, 97 A.3d 1257 (Pa. Super. 2014), in which, at the time of the Superior Court's decision in the instant case, this Court had granted review, in part.[2] Finding no basis to disturb the trial court's determination that Appellees had established good cause to warrant a

---

[2] In *Dougherty*, the *en banc* Superior Court panel affirmed the lower court's order granting a journalist's motion to compel the videotaped deposition of John Dougherty, Business Manager of the International Brotherhood of Electrical Workers, and denying Dougherty's motion for a protective order seeking in advance to prevent dissemination of the videotape. The Superior Court concluded that the trial court's order was collateral and appealable, and it expounded that the "good cause" standard "strikes an appropriate balance between competing interests, including a litigant's privacy interests, . . . and the court's obligations to administer justice efficiently and prevent abuse of the discovery process." 97 A.3d at 1266. Our Court granted review, in part, of the denial of the protective order. However, after recusals, only two Justices were able to hear the case. Following a challenge by Dougherty's counsel, the Court concluded that two Justices did not a quorum make, and appellate Judges Collins, Friedman, Leadbetter, Brobson, and Strassburger were appointed to hear the case, along with Chief Justice Saylor and Justice Wecht. Ultimately, the Court quashed the appeal, concluding it was not a collateral order and was interlocutory. *Dougherty v. Heller*, 138 A.3d 611 (Pa. 2016).

protective order, the Superior Court herein echoed the trial court's finding that the official statements from NAN, and the APA's Ethical Principles of Psychologists and its Code of Conduct, were persuasive that third-party observers should be excluded from the standardized test portion of the examination to keep the test free from distraction and bias caused by such observers. The panel further agreed with the trial court's conclusion that forcing Dr. Malatesta to conduct the examination in the presence of counsel would place him at odds with his ethical duties.

Finally, the Superior Court also concurred with the trial court's concern that permitting a third-party observer into the examination room would afford Appellants' counsel an "irrefutable impeachment tool," and, given the potential that tests conducted with a third-party observer might not yield a valid result, the doctor's own statements could be used for impeachment if the court forced him to conduct his examination in the presence of a third party against his will. *Shearer*, 135 A.3d at 644. Noting that the concerns expressed by the doctor and the trial court were neither abstract nor unsubstantiated, the court concluded that the trial court's proposed resolution — permitting Appellants' counsel to be present during Mrs. Shearer's preliminary interview, but not during the standardized testing portion of the exam — represented a thoughtful balance of the patient's interest in the presence of counsel, and the court's obligation to prevent abuse of the discovery process.

Appellants filed a petition for allowance of appeal with our Court, and we granted allocatur to address (1) whether Mrs. Shearer has the right to have counsel present and to audio record the defense's neuropsychological examination of her pursuant to Pa.R.C.P. 4010; and (2) whether the trial court properly granted a protective order excluding counsel and the recording of the standardized portion of the examination. We also instructed the parties to address whether the Superior Court erred in holding the

appeal was properly before our Court under the collateral order doctrine pursuant to Pa.R.A.P. 313. *Shearer v. Hafer*, 157 A.3d 477 (Pa. 2016) (order).

As it is a threshold inquiry, we first address the propriety of appellate review under the collateral order doctrine. Whether an order is appealable under the collateral order doctrine under Pa.R.A.P. 313 is a question of law, subject to a *de novo* standard of review, and the scope of review is plenary. *Rae v. Pa. Funeral Director's Association*, 977 A.2d 1121, 1126 n.8 (Pa. 2009).

Appellants contend that the trial court's order is reviewable as a collateral order under Pa.R.A.P. 313. First, Appellants claim that the order is separable from and collateral to the main cause of action, as the order at issue — a non-party defense examiner's claim that counsel may not be present during certain portions of his examination — is clearly separable from Mrs. Shearer's negligence claim. As to the second prong, Appellants argue that the ability of an injured plaintiff to have counsel present and to record all portions of a defense neuropsychological examination is too important to be denied review as it has not been previously considered by an appellate court, implicates a right deeply rooted in public policy beyond the litigants, and outweighs any efficiency interest in discouraging piecemeal litigation. Finally, as to the third prong, Appellants argue that compelling a psychological examination would render the claim irreparably lost, as, once the examination is conducted, Mrs. Shearer's protections under Rule 4010 would be gone, and, according to Appellants, no subsequent relief could be afforded.

For their part, Appellees offer that, generally, discovery orders are interlocutory, and they note that they initially questioned the Superior Court's jurisdiction in this matter. However, Appellees now agree with Appellant that the issues regarding a

party's right to counsel during a medical examination under Pa.R.C.P 4010 and 4012 were properly before the Superior Court pursuant to Pa.R.A.P. 313.

While the parties agree that the underlying issues satisfy Rule 313, and that the current appeal is properly before our Court, the question of whether the collateral order doctrine has been met is jurisdictional in nature. Therefore, we must independently consider whether the collateral order doctrine has been satisfied. *See Dougherty*, 138 A.3d at 627 n.9 (noting "jurisdictional dynamic" of collateral order doctrine insulating issue from waiver and finding issue "within the scope of appropriate *sua sponte* judicial review"); *Commonwealth v. Blystone,* 119 A.3d 306, 311 (Pa. 2015) ("Although the Commonwealth has not raised a question regarding our jurisdiction over the trial court's interlocutory order . . . we may nevertheless raise the issue of jurisdiction *sua sponte.*").

We first consider the evolution of the final order rule and the collateral order doctrine in the federal and state systems. Generally speaking, an appellate court's jurisdiction extends only to review of final orders. *See* Pa.R.A.P. 341 ("[A]n appeal may be taken as of right from any final order."). The final order rule reflects the long-held limitation on review by both federal and state appellate courts. Considering issues only after a final order maintains distinctions between trial and appellate review, respects the traditional role of the trial judge, and promotes formality, completeness, and efficiency. *See generally* Michael E. Harriss, *Rebutting the Roberts Court: Reinventing the Collateral Order Doctrine Through Judicial Decision-Making*, 91 Wash. U. L. Rev. 721, 725 (2014) ("Preventing piecemeal litigation is often seen as a means of promoting judicial efficiency and respecting the traditional role of the trial judge. According to this rationale, the cost of a wrong decision by a trial judge is typically outweighed by either the benefit provided by uninterrupted trial proceedings or the assurance that the issue is adequately reviewable through alternatives to an immediate appeal."); Riyaz A. Kanji,

*The Proper Scope of Pendent Appellate Jurisdiction in the Collateral Order Context*, 100 Yale L.J. 511, 512-13 (1990) (offering that the final order rule "serves to maintain the appropriate relationship between the district and appellate courts . . . by ensuring that [trial judges'] every determination is not subject to the immediate review of an appellate tribunal . . . . The consolidation of all contested rulings into a single appeal provides the circuit courts with an opportunity, furthermore, to consider a trial judge's actions in light of the entire proceedings below, thereby enhancing the likelihood of sound appellate review."). Further, the United States Supreme Court has suggested that allowing non-final orders to be immediately appealable could be used as a tool of harassment, by extending the litigation process and increasing the opposing party's expenses. *Cobbledick v. United States*, 309 U.S. 323, 325 (1940). In Pennsylvania, final orders are those which (1) dispose of all claims and all parties, (2) are explicitly defined as final orders by statute, or (3) are certified as final orders by the trial court or other reviewing body. *See* Pa.R.A.P. 341.

However, recognizing the harshness of the final order rule in certain circumstances, Justice Jackson, writing for the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), explicitly recognized an exception to the rule through the collateral order doctrine, which permitted the appeal of a narrow class of orders which address claims of right "separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause [of action] itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546.

Approximately 25 years later, in *Bell v. Beneficial Consumer Discount Co.*, our Court embraced the collateral order doctrine as a matter of Pennsylvania law, finding "a pre-trial order dismissing the class aspects of a suit, but allowing the case to proceed as

an individual action, is an appealable final order." 348 A.2d 734, 734 (Pa. 1975). Shortly thereafter, the Court followed the United States Supreme Court, embracing a "practical rather than a technical construction" of what constitutes an appealable order, adopting the three-part federal formulation, and, thus, permitting immediate appellate review of certain collateral orders. *Pugar v. Greco*, 394 A.2d 542, 545 (Pa. 1978) (quoting *Cohen*, *supra*). Over the subsequent 15 years, Pennsylvania's intermediate courts expressed a "need for clarification and reform" in the area, resulting in the 1992 adoption of Rule of Appellate Procedure 313. *Bollinger v. Obrecht*, 552 A.2d 359, 360 n.2 (Pa. Cmwlth. 1989); *see generally* Carl A. Solano and Bruce P. Merenstein, *Interim Issues Requiring Appellate Review -- Pennsylvania's Collateral Order Doctrine: Lessons From the Barnes Foundation Case and the 30 Years of Jurisprudence Preceding It*, 77 Pa. Bar Assn. Quarterly 145 (Oct. 2006).

Rule 313 provides, in pertinent part:

> **(a) General rule.** An appeal may be taken as of right from a collateral order of an administrative agency or lower court.
>
> **(b) Definition.** A collateral order is an order [1] separable from and collateral to the main cause of action where [2] the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313 (numerical listing added). Accordingly, where an order satisfies Rule 313's three-pronged test, an appellate court may exercise jurisdiction even though the order is not final. If the test is not met, however, and in the absence of another exception to the final order rule, there is no jurisdiction to consider an appeal of such an order. *See Commonwealth v. Kennedy*, 876 A.2d 939, 943 (Pa. 2005) (finding a Rule 313 issue is "an issue of [an appellate court's] jurisdiction to entertain an appeal").

More recently, however, and in response to perceived overly-generous use of the collateral order doctrine by federal intermediate courts, the United States Supreme

Court began imposing "severe limitations" on the ability of litigants to be granted review of a non-final order.[3]  For example, in *Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978), the Court rejected the determination by the United States Court of Appeals for the Second Circuit that a denial of class certification justified collateral review.  The Court reasoned, *inter alia*, that the factual issues underlying the denial of certification were enmeshed with the merits of the underlying litigation and the decision could be effectively reviewed after final judgment.  *Id.* at 468-69; *see also Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994) (holding the federal collateral order doctrine must be interpreted narrowly).  Consistent with this bounded approach to the collateral order doctrine, in 2009, the high Court, focusing solely on the third prong of the collateral order analysis, determined that a ruling regarding the disclosure of certain materials putatively protected by the attorney-client privilege was not eligible for collateral order appeal, as such orders were reviewable after a final judgment in the matter, and, thus, not irreparably lost as to justify collateral order review.  *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 108-09 (2009).

Our Court, however, recognizing that the *Mohawk* decision was at odds with our own jurisprudence, declined to follow the federal approach.  *Commonwealth v. Harris*, 32 A.3d 243 (Pa. 2011).  Respectfully disagreeing with the high Court's decision in *Mohawk*, our Court reasoned that, once disclosed, privileged material can be repeated to others, losing its confidentiality.  As we explained, "the bell has been rung, and cannot be unrung by a later appeal." *Id.* 32 A.3d at 249.

Additionally, as set forth in *Harris*, our Court embraced a more category-wide approach to discovery orders that are alleged to violate the attorney-client privilege or

---

[3] *See* Robert J. Martineau, *Defining Finality and Appealability by Court Rule: Right Problem, Wrong Solution*, 54 U. Pitt. L. Rev. 717, 740-42 (1993).

the work product doctrine. *See id.*; *see also Commonwealth v. Williams*, 86 A.3d 771, 780 (Pa. 2014); *Commonwealth v. Dennis,* 859 A.2d 1270, 1278 (Pa. 2004). Indeed, the *Harris* Court broadly stated that "orders overruling claims of privilege and requiring disclosure are immediately appealable under Pa.R.A.P. 313." 32 A.3d at 251.

Nevertheless, *Harris*' categorical approach must be tempered by an appreciation that the collateral order doctrine is to be narrowly construed in order to buttress the final order doctrine, and by the recognition that a party may seek an interlocutory appeal by permission pursuant to Pa.R.A.P. 312.[4] *See Williams,* 86 A.3d at 780*; Rae,* 977 A.2d at 1126. Thus, even post-*Harris,* in cases where the propriety of an appeal involving the attorney-client privilege or the work product doctrine is contested, we have still required the appealing party to establish each of the three prongs of the collateral order test to ensure that Rule 313 has been satisfied. *Dougherty*, 138 A.3d at 628-29; *Commonwealth v. Flor*, 136 A.3d 150, 155-56 (Pa. 2016).

In sum, then, while our Court has diverged from the federal approach in some regards, we nonetheless construe the collateral order doctrine narrowly, and insist that each one of its three prongs be "clearly present" before collateral appellate review is allowed. *Melvin v. Doe,* 836 A.2d 42, 47 (Pa. 2003); *Geniviva v. Frisk*, 725 A.2d 1209, 1214 (Pa. 1999). Indeed, "[w]e construe the collateral order doctrine narrowly so as to avoid 'undue corrosion of the final order rule,' . . . and to prevent delay resulting from 'piecemeal review of trial court decisions.'" *K.C. v. L.A.*, 128 A.3d 774, 778 (Pa. 2015) (quoting *Pridgen v. Parker Hannifin Corp.*, 905 A.2d 422, 427 (Pa. 2006)). As colorfully explained by then-Justice, later Chief Justice, Henry X. O'Brien, "[i]t is more important to

---

[4] Pursuant to Rule 312, "[a]n appeal from an interlocutory order may be taken by permission pursuant to Chapter 13 (interlocutory appeals by permission)." Pa.R.A.P. 312.

prevent the chaos inherent in bifurcated, trifurcated, and multifurcated appeals than it is to correct each mistake of a trial court the moment it occurs." *Calabrese v. Collier Township Municipal Authority*, 248 A.2d 236, 238 (Pa. 1968) (O'Brien, J., dissenting). Moreover, as parties may seek allowance of appeal from an interlocutory order by permission, we have concluded that that discretionary process would be undermined by an overly permissive interpretation of Rule 313. *Geniviva*, 725 A.2d at 1214 n.5.

With this background in mind, we turn to application of the three-prong collateral order test in this appeal. As noted above, the collateral order doctrine permits an appeal as of right from a non-final collateral order if the order satisfies the three requirements set forth in Rule 313(b) — separability, importance, and irreparability.

With regard to the first prong of the collateral order doctrine, an order is separable from the main cause of action if "it can be resolved without an analysis of the merits of the underlying dispute" and if it is "entirely distinct from the underlying issue in the case." *Blystone*, 119 A.3d at 312 (internal quotation marks omitted). The discovery-based issue of whether a plaintiff in a civil personal injury action has the right to counsel or other representative during a neuropsychological examination is a distinct legal question which has no bearing on the underlying issues in this negligence action. Consequently, we find that Appellants have established that the trial court's order is separable from the main cause of action, and, thus, have satisfied the first prong of the collateral order doctrine.

Turning to the second prong of the collateral order doctrine, the importance prong, a right is important if "the interests that would go unprotected without immediate appeal are significant relative to the efficiency interests served by the final order rule." *Williams*, 86 A.3d at 782. Further, the rights involved must implicate interests "deeply

rooted in public policy [and] going beyond the particular litigation at hand." *Blystone*, 119 A.3d at 312 (internal quotation marks omitted).

We find that Appellants' appeal does not satisfy this prong. First, the right to counsel in this instance does not implicate a constitutional right, but, rather, is rule-based. Indeed, Appellants' counsel at oral argument confirmed that the issue before us is not constitutional in nature. Additionally, the right asserted is not solely one implicating legal representation, as the rule provides that counsel "or other representative" may be present during an examination. Pa.R.C.P. 4010(a)(4). Indeed, at oral argument, Appellants' counsel explained that his practice was to have a nurse attend such examinations, thereby eliminating the potentiality of counsel having to testify at trial as a witness.[5] Finally, it appears that only a discrete part of the broader psychological examination is at issue, as Dr. Malatesta indicated he would allow Appellants' representative to be present during the interview portion of the evaluation, and would only preclude a representative at, or taping of, the standardized testing phase of his examination, and the trial court so ordered.

Rather than concerning a constitutional, *per se*, right to an attorney, the issue before our Court involves counsel and layperson representation, and is largely limited, individualized, and fact-based. Thus, we find that, while the contours of a right to representation during certain aspects of a neuropsychological evaluation give rise to a significant question, it is not of the magnitude of those issues which are "deeply rooted in public policy going beyond the particular litigation at hand." *Blystone*, 119 A.3d at

---

[5] Further, at oral argument, Appellants' counsel conceded that the right to representation in these circumstances is not absolute, but can be limited by the trial court in appropriate circumstances.

312.[6] Therefore, we find that Appellants have not satisfied the importance prong of the collateral order doctrine.[7]

Lastly, even if we were to determine that Appellants satisfied the second prong, we conclude that Appellants' claimed right to the presence of counsel or a representative at the standardized portion of a neuropsychological evaluation will not be irreparably lost if review is postponed until after final judgment, and, thus, that Appellants have failed to establish the third prong of the collateral order doctrine. Specifically, Appellants seek to have counsel or a representative present at any examination and claim the proverbial "bell cannot be unrung" such that relief would not be available after final judgment. We disagree.

If Mrs. Shearer is examined by Dr. Malatesta per the trial court's ruling — with representation during the interview portion of the neuropsychology examination, but not during the standardized testing phase of his evaluation, and without recording — and, subsequently on appeal, it is determined that she was legally entitled to the presence of a representative or the audiotaping of the entire evaluation, then a new trial could be awarded, and a new standardized test examination could be conducted with such representation and/or recording. The results of and any information obtained during, or

---

[6] *See, e.g., K.C.* (standing to intervene in custody proceedings); *Williams* (work product privilege); *Commonwealth v. Wright*, 78 A.3d 1070 (Pa. 2013) (right of defendant to proceed *pro se* and waive post-conviction appeals); *Harris* (privileged and confidential materials); *Ben v. Schwartz*, 729 A.2d 547 (Pa. 1999) (governmental/executive privilege in investigative file).

[7] Justice Mundy, in her dissent, takes exception to our analysis of the importance prong, asserting that the rule-based right to a representative — legal or otherwise — is "deeply rooted in public policy," and "too important to be denied review." Dissenting Opinion (Mundy, J.) at 2. In doing so, however, she offers an expansive interpretation of the importance requirement, in direct contradiction to the well-established mandate that the collateral order doctrine must be narrowly construed to uphold the integrity of the final order doctrine. *See K.C.*, 128 A.3d at 778.

derived from, the first unrepresented standardized testing, if found to be objectionable or prejudicial, could be excluded *in toto* for purposes of the new trial. *See, e.g., Vaccone v. Syken*, 899 A.2d 1103, 1107 (Pa. 2006) (finding "orders disqualifying counsel in civil cases are not collateral orders subject to appeal"), *superseded on other grounds by* Pa.R.A.P. 1114(b)(7); *Commonwealth v. Wells*, 719 A.2d 729, 731 (Pa. 1998) (determining criminal defendant's appeal of trial court's denial of counsel's petition to withdraw due to an alleged conflict of interest did not satisfy collateral order doctrine as defendant could be granted a new trial and new counsel on appeal). Indeed, Appellants offer no example of information or other matters that could not, in this fashion, be "unrung." Nor do they not contend that Mrs. Shearer would suffer any specific harm by taking the standardized portion of neuropsychological examination *without the presence of counsel or other representative*, which is the relevant focus. Rather, they simply assert that, if not permitted an interlocutory appeal, she would have to retake what could be a lengthy standardized examination; yet, this is the type of inconvenience which any litigant might suffer if they prevail on appeal and are, for example, granted a new trial. Thus, in our view, the rights that Appellants now assert, unlike privileges or immunities, are not irreparably lost if we do not allow an immediate interlocutory appeal in this matter.[8] Accordingly, we find that Appellants have not met the third prong of the collateral order test.[9]

---

[8] While the dissent raises the specter that the "passage of time may result in an inability to adequately measure or ascertain the pertinent conditions, deficiencies, or diagnoses" at issue in the neuropsychological examination, Dissenting Opinion (Mundy, J.) at 3, this contention misses the mark for two reasons. First, Appellants do not make this argument, generally, or with respect to Mrs. Shearer. Thus, Appellants themselves do not claim that the passage of time or some change in condition would cause them harm. Related thereto, as noted, the collateral order doctrine must be narrowly construed, and, for the doctrine to be satisfied, each prong must be "clearly present." *Doe*, 836 A.2d at 47. Thus, Appellants, by their own arguments, have failed to establish that Mrs. Shearer's right to representation would be irreparably lost, and the dissent's newly-
(continued…)

As Appellants have not satisfied the second and third prongs of the collateral order doctrine, and, as each and every prong must be "clearly present," we find that the requirements of the collateral order doctrine are not met. Thus, we conclude that the trial court's order disallowing representation during the standardized portion of the neuropsychological examination was not an appealable collateral order as of right under

---

(…continued)
introduced hypothetical regarding possible ramifications concerning the testing of individuals other than Mrs. Shearer cannot satisfy Appellants' mandate. In short, the dissent would grant relief on a theoretical basis not present in this case. In any event, parties that fall within the scenario painted by the dissent may nonetheless seek an interlocutory appeal by permission. *See* Pa.R.A.P. 312; 1311(b).

In defense of this postulated basis for relief, the dissent offers the uncontested proposition that the collateral order doctrine is jurisdictional, can be raised *sua sponte*, and is not subject to waiver. Dissenting Opinion (Mundy, J.) at 3 n.1. Yet, regardless of how the issue is raised, the burden remains on Appellees to establish an exception to the final order rule by showing that each prong of the collateral order doctrine is clearly present. It is in this regard that Appellees fail to present any "passage of time" argument, and, indeed, merely claim that the examination will be "irreparably lost" and that there is no way to "turn back the clock." We are not permitted to hypothesize facts which would serve to satisfy Appellees' burden.

[9] We find this matter to be distinguishable from *Commonwealth v. Shearer*, 882 A.2d 462 (Pa. 2005), cited by Appellants and the dissent. In *Shearer*, the issue before the Court was whether a minor complainant of an alleged sexual assault could be compelled to submit to a psychological examination to aid the trial court in determining whether the complainant was competent to testify. We found that, not only was the claim separable from the main cause of action, but that forcing the minor to submit to a psychological examination, without first conducting a traditional inquiry, raised constitutional issues of privacy and implicated a deeply rooted policy of protecting minor victims of crime. Moreover, the Court found that, once the minor submitted to such an examination, there was no way to turn back the clock to give relief that the minor be free from such examination.

By contrast, here, rather than a minor alleged victim being subjected to an anomalous psychological examination as part of a criminal trial, we have an adult plaintiff who has placed her alleged injuries for cognitive harm at issue, and who is raising a non-constitutional, rule-based claim of protection for only one discrete aspect of a neuropsychological examination. Thus, the considerations that satisfied the collateral order doctrine in *Shearer* are not present in this appeal.

Rule 313 and, consequently, that the Superior Court erred in considering Appellants' appeal. As a result, we do not reach the merits of the underlying issues on which we granted allocatur; rather, the order of the Superior Court is vacated, the present appeal is quashed as an unauthorized interlocutory appeal, and the matter is remanded to the Lebanon County Court of Common Pleas for further proceedings.

Jurisdiction relinquished.

Chief Justice Saylor and Justices Baer, Donohue, Dougherty and Wecht join the opinion.

Justice Wecht files a concurring opinion.

Justice Mundy files a dissenting opinion.