J-S16010-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID CHROMEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LORI CHROMEY | : | |
| | : | |
| Appellant | : | No. 1373 MDA 2021 |

Appeal from the Order Entered October 4, 2021
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s):  2021 FC 40086

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED AUGUST 09, 2022**

Lori Chromey ("Wife") appeals from the order granting David Chromey's ("Husband") petition for emergency special relief in their divorce action and directing that the parties' marital residence be listed for sale to pay their outstanding federal taxes. Wife argues that the trial court abused its discretion in entering the order, claiming that there was no evidence to suggest that the residence had to be sold to pay the taxes. We affirm.

The parties were married in 1993. Husband works as a podiatrist and Wife is a certified public accountant. Wife worked for Husband's podiatry practice and managed the finances of the office between 2010 and 2017. The parties separated in 2020, and Husband filed a complaint in divorce on January

---

[*] Retired Senior Judge assigned to the Superior Court.

25, 2021. At that time, Wife and the parties' adult daughter lived in the marital residence, and Husband continued to pay the mortgage on the home. On February 16, 2021, Wife filed an answer to Husband's complaint and a counterclaim.

A little over two months later, the IRS notified Husband that the parties owed $305,283.54 in federal taxes for the years between 2010 and 2017. The IRS further stated that interest would be charged on the outstanding debt from the original due date until the tax obligation was paid in full and that penalties would accrue on the tax obligations. The IRS subsequently instructed Husband that the parties had four weeks to pay $100,000 and provide verification of an application to borrow against the equity on the marital residence. The IRS further warned that the failure to meet the deadlines would require it to initiate legal proceedings, such as issuing a summons, a notice of levy, or other actions.

Ten days after receiving the IRS notice, Husband filed an emergency petition for special relief to require the sale of the marital residence to satisfy a portion of the federal taxes.[1] Husband asserted that the payment of the taxes without the sale would create a hardship on the parties. Wife filed an answer, arguing, in part, that the federal taxes would not create a hardship

---

[1] In the petition, Husband indicated that after including unpaid taxes from 2018 and 2019, the IRS sought $461,258.86. **See** Emergency Petition for Special Relief, 9/20/21, at ¶ 7; **see also** Trial Court Opinion, 12/20/21, at 1.

on Husband based upon his income. Wife further noted that Husband travels extensively, paid $90,000 for a vehicle for his girlfriend, and purchased an expensive engagement ring. However, Wife did not dispute that the parties were responsible for the unpaid taxes.

Four days before the due date on the IRS notice, following a hearing, the trial court found that both parties were responsible for the unpaid taxes and ordered that the marital residence be immediately listed for sale to satisfy the parties' outstanding federal taxes. Wife filed this timely appeal.[2]

Wife raises the following questions for our review:

1. Did the Trial Court err in determining that the marital residence shall immediately be listed for sale in order to pay the outstanding federal taxes[?]

2. Did the Trial Court err in determining that the marital residence shall immediately be listed for sale in order to pay the outstanding federal taxes as no evidence was presented showing that the Internal Revenue Service was demanding the sale of the marital residence in order to pay the outstanding federal taxes[?]

3. Did the Trial Court err in determining that the marital residence shall immediately be listed for sale given the evidence

---

[2] After filing the above notice of appeal, Wife timely filed a petition requesting that the trial court amend its order to indicate that order could be appealed as an interlocutory appeal. Shortly thereafter, the trial court amended its order pursuant to 42 Pa.C.S.A. § 702(b), stating that the "interlocutory order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the case." Order, 11/9/21. On December 8, 2021, Wife filed a petition for permission to appeal pursuant to Section 702(b). This Court subsequently denied the petition in light of this appeal. **See Chromey v. Chromey**, 78 MDM 2021 (Pa. Super. filed Jan. 24, 2022) (order).

presented at the time of the Hearing that the Internal Revenue Service was seeking to have the parties borrow $100,000.00 dollars against the marital residence to make a payment toward the outstanding federal taxes[?]

4. Did the Trial Court err in determining that the marital residence shall immediately be listed for sale to pay the outstanding federal taxes as no evidence was presented showing that the Internal Revenue Service was seeking immediate payment of the outstanding federal taxes[?]

5. Did the Trial Court err in giving any weight whatsoever to any testimony regarding unpaid payroll taxes as no evidence was presented showing that the outstanding federal tax obligation has anything to do with unpaid payroll taxes[?]

6. Did the Trial Court err in determining that, as punishment for Wife's failure to pay payroll taxes, the marital residence shall immediately be listed for sale to pay the outstanding federal taxes[?]

Brief for Appellant at 4-5.

Prior to addressing Wife's claims, we must determine whether the order in question is appealable.[3] "In order to be appealable, the order must be: (1) a final order, Pa.R.A.P. 341-42; (2) an interlocutory order appealable by right or permission, 42 Pa.C.S.[A.] § 702(a)-(b); Pa.R.A.P. 311-12; or (3) a collateral order, Pa.R.A.P. 313." *Interest of J.M.*, 219 A.3d 645, 650 (Pa. Super. 2019) (footnote omitted).

_____

[3] On January 14, 2022, this Court initially quashed this appeal, finding that the October 4, 2021 order does not appear final or otherwise appealable because the divorce decree had not been entered and there was no final equitable distribution order. However, on January 22, 2022, this Court vacated the order, noting that the issue could be revisited by this panel.

In her brief, Wife argues that the October 4, 2021 order was a collateral order. "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). The collateral order doctrine, which must be construed narrowly, permits an appeal as of right from a non-final order if the order satisfies the three requirements set forth in Rule 313(b). *See Shearer v. Hafer*, 177 A.3d 850, 858 (Pa. 2018).

> With regard to the first prong of the collateral order doctrine, an order is separable from the main cause of action if it can be resolved without an analysis of the merits of the underlying dispute and if it is entirely distinct from the underlying issue in the case. …
>
> Turning to the second prong of the collateral order doctrine, the importance prong, a right is important if the interests that would go unprotected without immediate appeal are significant relative to the efficiency interests served by the final order rule. Further, the rights involved must implicate interests deeply rooted in public policy [and] going beyond the particular litigation at hand.

*Id.* at 858-59 (citations and quotation marks omitted). "The third prong requires us to examine whether the claim would be irrevocably lost if review were postponed until final judgment." *Spanier v. Freeh*, 95 A.3d 342, 346 (Pa. Super. 2014) (emphasis omitted).

Wife contends that the three prongs of the collateral order test have been met in the instant case. **See** Brief for Appellant at 37.[4] Wife first argues that the order is separable from and collateral to the main cause of action, noting that the order to sell the marital residence to pay the outstanding federal taxes is separate and distinct from the equitable distribution claim and can be resolved without analysis of the underlying merits of the resolution of equitable distribution of the marital estate. **See id.** at 38. Next, Wife asserts that under the United States Tax Code, the right of individuals to establish that they are not the party responsible for a tax obligation that requires the sale of real property is too important to be denied review. **See id.** at 38-43. To that end, Wife claims that her rights and the rights of all citizens under the Code is "deeply rooted in public policy going beyond the particular litigation at hand." **Id.** at 43 (citation omitted). Finally, Wife argues that her loss would be irreparable, highlighting that she would lose her right to the marital residence and a final equitable distribution order could not remedy such a loss. **See id.** at 44.

_____

[4] We note that Wife also argues that this appeal is properly before this Court, as the trial court amended its initial order to state that it is from an interlocutory order appealable by right or permission. As noted above, this Court denied Wife permission to appeal the amended order. In this regard, the trial court did not initially list the October 4, 2021 order as one appealable by right. Nevertheless, as discussed more fully in the body of this memorandum, we need not further discuss this argument because we have found the order was a collateral order and is appealable.

Generally, orders granting interim relief in divorce actions are not appealable under the collateral order doctrine. ***See Fried v. Fried***, 501 A.2d 211, 215 (Pa. 1985). Notably, if an initial award of relief is granted, the trial court has the power to adjust it through the equitable distribution or the final award. ***See id.*** However, if an interim order of relief will result in irreparable harm that cannot be remedied through equitable distribution or a final award, the order may be appealable under the collateral order doctrine. ***See McMahon v. McMahon***, 706 A.2d 350, 353 n.1 (Pa. Super. 1998); ***McDonald v. McDonald***, 621 A.2d 604, 605 (Pa. Super. 1993).

Here, the order directing the parties to sell the marital residence to pay the outstanding tax obligations does not affect the rights of the parties in the underlying divorce action. Moreover, Wife's right to live in and use the home that she owns is an important right and implicates interests deeply rooted in public policy. Finally, Wife's right to the marital residence would be irreparably lost if this order were not reviewed until the divorce action was final. Indeed, the sale of the residence is a final action, and may not be later changed or modified through equitable distribution or a final order. Therefore, the order requiring the sale of the marital residence is appealable as a collateral order. ***See McMahon***, 706 A.2d at 353 n.1 (holding that a trial court order granting special relief in a divorce action which required the sale of property is appealable under the collateral order doctrine). Accordingly, we will address the merits of Wife's claims.

Here, we will address Wife's remaining interrelated claims together. Wife contends that there was no evidence to show that the IRS demanded the sale of the marital residence to pay the outstanding taxes; instead, Wife argues that the IRS sought to have the parties borrow $100,000 against the residence to make a payment on the unpaid taxes and that the IRS was not seeking immediate and full payment of the taxes. *See* Brief for Appellant at 11, 35-36. Wife highlights that the sale of the marital residence would not cover the tax obligations. *See id.* at 47. Additionally, Wife points out that, although Husband refuses to take any responsibility for the outstanding taxes, he has continued to fail to pay his personal taxes, including for 2018 and 2019. *See id.* at 36. Wife also disputes her responsibility for paying the 2017 taxes, suggesting that she paid her taxes and did not allow the unpaid tax obligations to grow. *See id.* at 37.

Moreover, Wife asserts that the trial court erroneously punished her by ordering the sale of the home due to her previous failure to pay payroll taxes on behalf of Husband's podiatry practice. *See id.* at 45. Instead, she contends that there is no evidence to suggest that the unpaid tax obligations were due to unpaid payroll taxes. *See id.* at 45-46. Wife concludes that the trial court's order is punitive and egregious, arguing that the home will likely be sold immediately and would leave her homeless and destitute. *See id.* at 51-53.

"[A] petition for special relief is an appeal to the equitable powers of the trial court." *Johnson v. Johnson*, 864 A.2d 1224, 1230 (Pa. Super. 2004)

(citation omitted); *see also* Pa.R.C.P. 1920.43(a) (stating that in an action for divorce, a party may seek special relief). We review a trial court's decision to grant special relief in divorce actions under an abuse of discretion standard:

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure. …
>
> However, our deference is not uncritical. An order may represent an abuse of discretion if it misapplies the law. It is therefore our responsibility to be sure that in entering its order the ... court correctly applied the law. An order may also represent an abuse of discretion if it reaches a manifestly unreasonable result. This will be the case if the order is not supported by competent evidence. It is therefore also our responsibility to examine the evidence received by the ... court to be sure that the ... court's findings are supported by the evidence. Although we will accept and indeed regard ourselves as bound by the ... court's appraisal of a [witness's] credibility, we are not obliged to accept a finding that is not supported by the evidence.

*Prol v. Prol*, 935 A.2d 547, 551-52 (Pa. Super. 2007) (citations omitted).

At the hearing on the special petition, Husband testified that he is a podiatrist and has his own practice. *See* N.T., 10/1/21, at 24. Husband confirmed that between 2010 and 2017, Wife worked at his practice as the general office manager and notably prepared and submitted the business taxes. *See id.* at 29. Husband further stated that Wife managed the marital residence and personal expenses of the parties. *See id.* at 29-30. Husband became aware of the outstanding federal taxes in 2020 after employees questioned him about unpaid payroll and Social Security taxes. *See id.* at 30-

31. Husband discovered that taxes were owed between 2010 and 2017 and affirmed that Wife never informed him of the unpaid taxes. *See id.* at 31-33.

Husband further testified that he had no assets and minimal savings which could be used to satisfy the tax liability and that the residence needed to be sold to pay down the debt. *See id.* at 33-34, 35-36; *see also id.* at 36-37, 39-41 (wherein Husband acknowledged that he paid for vacations with his girlfriend; he purchased her ring and a vehicle). According to Husband, he believed that the sale of the home would allow the parties to pay approximately $200,000 of the debt. *See id.* at 34.

Bernard Fagnani, a certified public accountant and financial advisor, testified that he represented Husband before the IRS. *See id.* at 9-10. Fagnani indicated that he spoke with IRS agent, who inquired as to whether the parties would borrow against or sell the marital residence, and if the residence were sold, whether the IRS would receive the net proceeds from the sale to satisfy a significant portion of the taxes. *See id.* at 11-13. Fagnani testified upon sale of the marital residence, the IRS would agree to a payment plan with the parties for the remaining balance that would be divided based upon the parties' relative incomes. *See id.* at 16, 17. Fagnani questioned whether Husband had sufficient income to satisfy the unpaid debt. *See id.* at 15.

Wife testified that she was a certified public accountant and worked as an auditor. *See id.* at 47-48, 57. Wife confirmed that she was the office manager at Husband's podiatry practice and that she was responsible for

maintaining the practice's accounts and paying the bills and taxes. *See id.* at 48-49, 50-51; *see also id.* at 56-57 (noting that when she discussed the tax obligations with Husband, he informed her to fix the problem). Wife conceded that she received notices of delinquency of unpaid taxes and that she could not keep up with the tax debt due to the expenses of the practice and the parties. *See id.* at 49-50, 52-53. Specifically, Wife confirmed that she did not pay certain payroll taxes of the practice's employees to pay other costs of the parties. *See id.* at 53-54. Wife further indicated that the parties previously sold one of their properties to satisfy outstanding tax obligations. *See id.* at 53.

Wife took issue with the parties' 2017 return because she claimed she had filed her own return. *See id.* at 54-55; *but see id.* at 55 (wherein Husband's counsel indicates that the IRS lien stated that the parties filed a joint return in 2017). Additionally, Wife testified that she attempted to make payments on the delinquent taxes in 2019. *See id.* at 49-50. Finally, Wife testified that Husband had the money to pay the tax liability, but that he had excessive spending habits, including buying hunting equipment, new vehicles, and a tractor for his hunting property. *See id.* at 55.

Here, the trial court did not abuse its discretion when it ordered the sale of the marital residence to pay for a portion of the unpaid taxes. The evidence of record established that an emergency arose out of IRS's demand that the parties to obtain money to pay the unpaid taxes. Indeed, evidence was

adduced that the parties were unable to pay the taxes and that both parties were responsible for the unpaid taxes. Moreover, Wife admitted that the parties previously sold property to pay unpaid tax obligations. This is sufficient evidence to support the trial court's finding that the parties needed money and that such need warranted the sale of the marital residence.

Furthermore, though Wife raises claims regarding Husband's spending habits, we conclude that such considerations are better left to the equitable distribution of the parties' assets. ***See id.*** at 62 (wherein the trial court states that it is "very difficult … to know in terms of equitable distribution and things like that down the road, because … it does sound … like [Husband] likes to spend money excessively and money that maybe he doesn't have the ability to spend. But it doesn't … negate … the fact that this tax debt grew…."). In this regard, Wife does not point to any evidence to establish that Husband had income or that there were marital assets other than the marital residence available to pay the tax liability. Additionally, Wife's claim that she was not responsible for the 2017 taxes because she paid her personal taxes is not supported by any evidence in the record. In fact, Wife does not demonstrate that this information is pertinent to the instant case since the parties did not separate until 2020 and Wife admitted that she attempted to pay some of the outstanding tax debt in 2019.

In conclusion, although we are sympathetic to Wife losing her home, given the testimony of the unpaid taxes, the parties' inability to pay the

obligations, and the fact Wife admitted that both parties incurred the tax obligations, the trial court's determination is supported by the record, and we find no abuse of discretion. ***See McMahon***, 706 A.2d at 353-54 (concluding that trial court did not abuse its discretion in granting special relief by ordering the sale of the parties' home to make outstanding payments based upon evidence that the parties had a poor financial outlook and the parties needed money).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/09/2022