IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Golden Mile Associates, a Pennsylvania Fictitious Name Entity | : | |
| | : | |
| | : | |
| v. | : | No. 262 C.D. 2024 |
| | : | |
| Commonwealth of Pennsylvania, | : | Submitted: October 17, 2025 |
| Department of Transportation, | : | |
| Municipality of Monroeville, | : | |
| Monroeville Municipal Authority, | : | |
| and Borough of Plum | : | |
| | : | |
| Appeal of: Municipality of Monroeville | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE MATTHEW S. WOLF, Judge

OPINION
BY JUDGE McCULLOUGH                    FILED: March 10, 2026

Appellant, the Municipality of Monroeville (Municipality), appeals from the order entered in the Court of Common Pleas of Allegheny County (trial court) on February 14, 2024, denying its motion for summary judgment asserting the defense of governmental immunity pursuant to Section 8541 of the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541 (the Act)[1] against the lawsuit filed by Appellee Golden Mile Associates (Golden Mile). The Municipality contends that the trial court's order

---

[1] The Act "is a legislatively imposed shield of government immunity against any damages on account of any injury to any person or property by any act of a local agency or employees thereof or any other person, except as provided in the statute itself." *Kiley by Kiley v. City of Philadelphia*, 645 A.2d 184, 185 (Pa. 1994). Section 8541 provides the general rule of governmental immunity and states: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541.

is appealable as a collateral order, and challenges the court's determination that it is not entitled to the defense of governmental immunity. After careful review, we quash this appeal because the trial court's interlocutory order is not an appealable collateral order.

**Background**

The relevant facts and procedural history of this case are as follows. In December of 1986, Golden Mile purchased an eight-acre parcel of land housing four office and warehouse buildings located in the Municipality (Property). A ten-foot wide drainage easement runs along the northern boundary of the Property near its border with an adjoining road, and a 48-inch corrugated metal drainage pipe is located underground within the easement. The condition of the drainage pipe has been deteriorating since 2001, causing subsidence, ground erosion and flooding in the area. The parties have been involved in a longstanding dispute as to who is responsible for repairing the pipe and maintaining the easement area.

On January 16, 2003, the Municipality sent Golden Mile a letter denying ownership of the drainage pipe. (Reproduced Record (R.R.) at 61a.) On October 20, 2020, Golden Mile filed a complaint against the Municipality alleging counts of trespass, negligence, and nuisance for its alleged failure to adequately repair and maintain the drainage pipe. Golden Mile averred "that [the Municipality] and/or the [Monroeville] Municipal Authority own, hold title to, and/or are responsible for the area encompassing the Drainage Easement." (R.R. at 9a.)[2] Golden Mile further averred that "the Drainage Pipe was designed, constructed and installed by or on behalf

_____

[2] We note that under Pennsylvania law, municipalities and municipal authorities are separate and distinct legal entities. *See Reading Blue Mountain & Northern Railroad v. Seda-Cog Joint Rail Authority*, 235 A.3d 438, 446 (Pa. Cmwlth. 2020).

2

of Defendants, PennDOT, [the Municipality], the Municipal Authority and Plum [Borough.]" (R.R. at 11a.) Golden Mile attached to its complaint the recorded plan for the Property identifying the drainage easement.

In its answer to the complaint, the Municipality averred that it is a local governmental agency and political subdivision that is entitled to governmental immunity under the Act. (R.R. at 23a.) The Municipality disputed ownership of the drainage easement and pipe and maintained that it "does not have legal title to the alleged drainage easement nor has it accepted it by ordinance . . . and is not responsible for the area encompassing the drainage easement." (R.R. at 25a.) The parties thereafter engaged in discovery and deposed Golden Mile's adjacent property owner, Richard Kacin, and Golden Mile representative Robert Poling.

On December 8, 2023, the Municipality filed a motion for summary judgment on the basis of governmental immunity, averring that Golden Mile failed to come forward with evidence to show that its cause of action falls within one of the exceptions set forth in Section 8542(b) of the Act, including the potentially applicable "Utility service facilities" exception, because it produced no evidence establishing the Municipality owns the drainage pipe or drainage easement located on the Property.[3] (Motion for Summary Judgment, at ¶¶ 82-84.)[4] The Municipality attached to its motion the deposition testimony of Mr. Kacin and Mr. Poling.

Mr. Kacin testified that Golden Mile purchased the Property from his father in the mid-1980s, and that he did not know who installed the drainage pipe on

---

[3] The pertinent exception to immunity is the "utility service facilities" exception, which provides liability for negligence relating to: "Utility service facilities.--A dangerous condition of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way[.]" 42 Pa.C.S. § 8542(b)(5).

[4] This document is included in the Original Record, but not the Reproduced Record.

the Property.  (R.R. at 126a, 128a.)  Mr. Kacin explained that stormwater in the area flows from an adjoining property at a higher elevation, enters the drainage pipe on his property, and continues downhill into the pipe located on the Property.  (R.R. at 136a.)  Mr. Kacin believed that the Municipality owns the pipe, stating that he "always thought that there was an agreement, [] that . . . [the Municipality] would take over the piping and the infrastructure in the development of the housing, it's very typical that the municipalities take over these -- the infrastructure."  (R.R. at 143a.)  However, Mr. Kacin's testimony also indicated that municipal ownership of such infrastructure is not always the case, in that he acknowledged the Municipality refused ownership of the section of pipe running through his property, and he personally paid $80,000 to repair it.  (R.R. at 133a-34a.)

One of Golden Mile's general partners, Mr. Poling, expressed his belief that the Municipality is responsible for maintaining the drainage easement because in 2001 Golden Mile contacted the "borough manager, I believe, and ultimately after investigation, [it] came out and repaired the pipe in that drainage easement."  (R.R. at 78a.)  According to Mr. Poling, Golden Mile does not own the drainage pipe because it is located in a recorded easement area, and to his knowledge, the drainage pipe does not benefit the Property.  (R.R. at 91a, 119a-20a).  Mr. Poling additionally testified that Golden Mile pays a Municipal Separate Storm Sewer System fee (MS4 fee) "for storm water management" which he assumed "covers these types of matters."  (R.R. at 77a.)[5]

However, during questioning by counsel for the Municipality, Mr. Poling indicated that the Municipal Authority, rather than the Municipality itself, made the

---

[5] The MS4 fee was enacted by the Municipality in October of 2018 through Ordinance No. 2689.  Golden Mile has paid annual MS4 fees of approximately $9,480.00 per year.  (R.R. at 31a-32a.)

repairs to the pipe, and that these repairs were made pursuant to a license agreement executed by the Municipal Authority and Golden Mile. (R.R. at 79a-80a.)[6] Mr. Poling also averred that he was not aware of any recorded deed indicating that the Municipality had formally accepted and holds legal title to the drainage easement, nor was he aware of the Municipality's acceptance of the easement by dedication or by any other form of legal tender. (R.R. at 78a-79a.) Mr. Poling additionally testified that he did not know who installed the drainage pipe on the Property and that he had no information or evidence showing that the Municipality had installed it. (R.R. at 84a.)

The trial court held a hearing on the Municipality's motion for summary judgment on February 14, 2024, and it denied the motion by order entered that same

---

[6] The license agreement between Golden Mile and the Municipal Authority was entered into the record as Exhibit 20 and provides in pertinent part:

THIS LICENSE AGREEMENT made as of the 10th day of March 2003 by and between Golden Mile Associates, a Pennsylvania Partnership, Robert C. Poling, General Partner, with an address of 500 Greentree Commons, 381 Mansfield Avenue, Pittsburgh, Pennsylvania 15220 ("Licensor") and the Monroeville Municipal Authority, a municipal authority organized under the laws of the State of Pennsylvania and having its principal office and place of business at 4185 Old William Penn Highway, Monroeville, Pennsylvania ("Licensee").

WHEREAS, Licensor owns, leases, occupies and operates certain property which Licensee wishes to enter upon and use for the purposes hereinafter described;
. . . .

Licensor shall permit Licensee, its officers, employees, agents and servants, to enter upon and use that certain property herein described, on the dates and during the hours herein defined, for the purposes of securing, supporting and stabilizing a public sanitary sewer transmission line.

(R.R. at 62a.)

5

date.[7] The Municipality then filed a motion requesting the trial court to amend its order to certify it for interlocutory appeal, which the trial court denied. *See* Pa.R.A.P. 312 (permitting appeals from interlocutory orders by permission).

On March 4, 2024, the Municipality filed a notice of appeal in this Court, arguing that the trial court's order denying its motion for summary judgment is appealable as a collateral order pursuant to Pennsylvania Rule of Appellate Procedure 313(b). *See* Pa.R.A.P. 313(b). The trial court entered a Rule 1925(a) opinion on April 17, 2024, in which it addressed its rationale for denying summary judgment, stating that: "[w]hile there is no direct evidence in the record that [the Municipality] owns the drainage pipe, there is abundant circumstantial evidence that it does." (Trial Ct. Op. at 4.) The trial court found that entry of summary judgment was not appropriate, as issues of material fact remained as to whether the pipe was a part of the Municipality's infrastructure, and viewing the evidence "in a light most favorable to Golden Mile, its drainage pipe is part of [the Municipality's] storm water system[.]" *Id.* at 6.

On July 16, 2024, this Court entered a *per curiam* order directing the parties to address the threshold issue of appealability of the trial court's order in their principal briefs.

---

[7] Although Golden Mile did not file a written response to the Municipality's motion for summary judgment, counsel was present at the hearing and vigorously opposed it. (Trial Ct. Op., at 2, 4.) The Municipality maintains that Golden Mile's failure to file a written response results in waiver, citing Pennsylvania Rule of Civil Procedure 1035.3, which provides in relevant part that "[s]ummary judgment **may** be entered against a party who does not respond." Pa.R.Civ.P. 1035.3(d) (emphasis added); *see also* Municipality's Br., at 49-50. However, we disagree with the Municipality's waiver argument, as the language of the operative rule is permissive, and the trial court found in favor of Golden Mile on this point, as Golden Mile zealously opposed the Municipality's summary judgment motion at the hearing.

## Discussion

## Collateral Order Doctrine

We begin by addressing the appealability of the trial court's February 14, 2024 order, as it directly impacts our jurisdiction over this case. *Smith v. Ivy Lee Real Estate LLC*, 326 A.3d 1064, 1069 (Pa. Cmwlth. 2024).[8] "In Pennsylvania, an immunity defense does not, in and of itself, entitle a litigant to appellate review of an interlocutory order." *Hammond v. Thompson*, 551 A.2d 667, 668 (Pa. Cmwlth. 1988). As noted, the Municipality contends this Court has jurisdiction over this appeal pursuant to the collateral order doctrine, which permits an appeal as of right from a non-final collateral order if the order satisfies the three requirements set forth in Rule 313(b). This rule provides:

> **(a) General Rule**. An appeal may be taken as of right from a collateral order of a trial court or other government unit.
>
> **(b) Definition**. A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(a), (b).

Thus, an order is collateral and appealable if it satisfies the following three prongs: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that, if review is postponed until final judgment in the case, the claim will be irreparably lost. Pa.R.A.P. 313(b). All these prongs must be met before this Court may apply the

---

[8] "Whether an order is an appealable collateral order is a question of law subject to a *de novo* standard of review and plenary scope of review." *Commonwealth v. Baroness Consulting & Mediation, LLC*, 337 A.3d 640, 646 n.9 (Pa. Cmwlth. 2025), *appeal denied*, __ A.3d __ (Pa., No. 315 MAL 2025, filed December 2, 2025).

7

collateral order doctrine to exercise jurisdiction over a case to reach the merits of the issues on appeal. *J.C.D. v. A.L.R.*, 303 A.3d 425, 430 (Pa. 2023). Additionally, we construe the collateral order doctrine narrowly, as "[t]his approach avoids undue corrosion of the final order rule and prevents delay resulting from piecemeal review of trial court decisions." *Commonwealth v. Pownall*, 278 A.3d 885, 903 (Pa. 2022).

As to the first prong of the collateral order test, our Supreme Court has explained that "[a]n order is separable from the main cause of action if it can be resolved without an analysis of the merits of the underlying dispute and if it is **entirely distinct** from the underlying issue in the case." *Shearer v. Hafer*, 177 A.3d 850, 858 (Pa. 2018) (emphasis added). "This limitation ensures that the order is sufficiently removed from the main cause of action so that the appellate court does not review matters which are ingredients of the underlying case." *Bollinger v. Obrecht*, 552 A.2d 359, 362 (Pa. Cmwlth. 1989).

Therefore, when assessing the separability prong of the collateral order doctrine in the instant case, we must consider whether the Municipality's claim of governmental immunity pursuant to the Act is entirely distinct from the underlying tort issues in the case. *See Shearer*, 177 A.3d at 858. As noted, the Act sets forth the general rule of governmental immunity from tort liability, and enumerates a limited number of exceptions where the protection is waived, including the exception for dangerous conditions of utility service facilities. *Degliomini v. ESM Productions, Inc.*, 253 A.3d 226, 241 (Pa. 2021); *see also* 42 Pa.C.S. § 8542(b)(5). We are also mindful that "[the] exceptions to the absolute rule of immunity expressed in the statute must be narrowly interpreted given the expressed legislative intent to insulate political subdivisions from tort liability." *Dorsey v. Redman*, 96 A.3d 332, 341 (Pa. 2014).

8

In *Bollinger*, this Court determined that an order denying a motion for summary judgment raising an immunity defense was not appealable as a collateral order because the immunity claim presented factual and legal issues to be decided in the main cause of action. *Bollinger*, 552 A.2d at 363. Therefore, we quashed the appeal for failure to satisfy the separability prong of the collateral order analysis. Similarly, in *Melchiorre v. Haileab* (Pa. Cmwlth., 1186 C.D. 2021, filed February 27, 2023) (unreported), we quashed an appeal from an order denying a motion for summary judgment because "the issue of whether [the defendant] is entitled to immunity cannot be resolved independent of a consideration of the tort claim . . . [and] is not separable from and collateral to the main cause of action." *Melchiorre*, 1186 C.D. 2021, slip op. at 11;[9] *see also Hammond v. Thompson*, 551 A.2d 667, 668 (Pa. Cmwlth. 1988) (quashing appeal from order denying motion for summary judgment asserting immunity defense because it did not meet the collateral order test); *Gwiszcz v. City of Philadelphia*, 550 A.2d 880, 882 (Pa. Cmwlth. 1988) (quashing appeal from order denying motion for summary judgment based on the defendant's claim of immunity because the question of immunity was not separable from the main cause of action and was therefore not appealable under the collateral order doctrine).

Here, the immunity exception at issue provides liability for negligence relating to "Utility service facilities.--A dangerous condition of **the facilities** of steam, **sewer**, water, gas or electric systems **owned by the local agency and located within rights-of-way**[.]" 42 Pa.C.S. § 8542(b)(5) (emphasis added). Additionally, the relevant municipal ordinance defines the term "storm sewer system" as "the system of collection and conveyance including pipes, conduits, main lines, inlets, culverts, catch basins, gutters, ditches, channels, detention ponds, streets, curbs, drains and all devices,

---

[9] We cite this unreported decision issued by this Court for its persuasive value. *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

appliances and facilities appurtenant thereto used for collecting, conducting, pumping, conveying, detaining and/or treating stormwater." (Trial Ct. Op. at 6-7) (quoting Ordinance No. 2689). The trial court found that entering summary judgment in favor of the Municipality based on governmental immunity was not appropriate, as circumstantial evidence in the record supported Golden Mile's assertion that the Municipality owned the subject pipe which was a part of its storm sewer system, and issues of material fact remained for trial.

Based on the foregoing, we conclude that the issue of whether the Municipality is entitled to immunity cannot be separated from the outstanding issue of whether the pipe was part of the Municipality's sewer system, part of the other defendants' sewer systems, or whether it is owned by Golden Mile. As in *Bollinger* and *Melchiorre,* the issue of ownership of the pipe and drainage easement is a question of fact for the fact finder to determine, and **is essential to both the immunity claim and to the underlying merits of this dispute**. Therefore, because the propriety of governmental immunity here is inextricably related to the merits of Golden Mile's case, and in accordance with our longstanding practice of construing the collateral doctrine order narrowly, we conclude this appeal is not collateral or authorized by Rule 313(b). Accordingly, we quash this interlocutory appeal.

## Conclusion

We conclude that the trial court's order denying the Municipality's motion for summary judgment raising the defense of governmental immunity is interlocutory and is not appealable as a collateral order. Accordingly, we quash this appeal.

_____
PATRICIA A. McCULLOUGH, Judge

10

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Golden Mile Associates, a
Pennsylvania Fictitious Name
Entity

      v.
      :   No. 262 C.D. 2024

Commonwealth of Pennsylvania,
Department of Transportation,
Municipality of Monroeville,
Monroeville Municipal Authority,
and Borough of Plum

Appeal of: Municipality of Monroeville

## *ORDER*

AND NOW, this 10th day of March, 2026, the Municipality of Monroeville's appeal of the interlocutory February 14, 2024 order entered in the Court of Common Pleas of Allegheny County is hereby QUASHED.

_____
PATRICIA A. McCULLOUGH, Judge