619 A.2d 390

**Colton L. HUGHES, Petitioner,**

v.

**PENNSYLVANIA STATE POLICE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 16, 1992.
Decided Dec. 30, 1992.

410

Robert Pandaleon, for petitioner.

Joseph S. Rengert, Chief Counsel, for respondent.

Before PALLADINO and McGINLEY, JJ., and BARRY, Senior Judge.

BARRY, Senior Judge.

Colton L. Hughes (Hughes) appeals from a decision of the Background Investigation Appeal Board which affirmed a decision of the Background Investigation Screening Board and disqualified him as a candidate for appointment to the Pennsylvania State Police. For the reasons that follow, we are compelled to quash Hughes' appeal.

In March of 1990, Hughes completed and filed an application for appointment as a State Police Cadet with the Pennsylvania State Police. As a part of the application process, Hughes completed a questionnaire on which he indicated that he had been rejected for employment with the Maryland State Police. The Pennsylvania State Police then contacted its Maryland counterpart and asked for information concerning the latter's background investigation concerning Hughes. Contained in the information sent by the Maryland State Police was a report which indicated that Hughes admitted to having experimented with marijuana, amphetamines, methamphetamine and valium; in addition, Hughes admitted that in high school he had sold marijuana to a friend. When the Pennsylvania State Police interviewed Hughes, after receiving this report, he indicated that he had not used any drugs since

graduating from high school in 1983 but that he did drink approximately two six packs of beer per week. By letter of June 22, 1990, the Background Investigation Screening Board informed Hughes that he had been disqualified as a candidate because of his prior admitted drug use. Hughes appealed to the Background Investigation Appeal Board which affirmed the disqualification and so notified Hughes by letter of August 20, 1990.

Hughes filed a petition for review nunc pro tunc in this Court on November 22, 1991. Therein, he alleged that, following his receipt of notification that his appeal had been rejected, he hired Aaron Matte, Esquire, to appeal to this Court. Matte made representations to Hughes that the appeal had been filed. He later told Hughes that the appeal had been successful and that Hughes was scheduled to start in the Pennsylvania State Police's academy class on November 12, 1991. On November 7, 1991, Hughes read in a local newspaper that Matte had been disbarred. When Hughes learned that Matte had lied to him he immediately contacted present counsel, who filed the petition for review nunc pro tunc two weeks after Hughes learned of Matte's deception. This Court, by order of an individual judge, granted the late appeal by order of December 13, 1991. The Pennsylvania State Police, thereafter, filed a motion for reconsideration which, after being reviewed by the entire Court, was denied on January 24, 1992.

The Pennsylvania State Police again renews its argument that Hughes' appeal must be quashed because of the untimely appeal. In *Larocca v. Workmen's Compensation Appeal Board (The Pittsburgh Press)*, 140 Pa.Commonwealth Ct. 192, 200, 592 A.2d 757, 761 (1991), we stated, "[w]hen nothing evidencing an intent to appeal is filed within the statutory period, the appeal is not timely and must be quashed, absent a showing of circumstances meriting grant of an appeal *nunc pro tunc*." In *Hentz v. Civil Service Commission of Philadelphia*, 85 Pa.Commonwealth Ct. 358, 481 A.2d 998 (1984), a police officer who had been disciplined did not appeal the order imposing the discipline in a timely fashion.

As did Hughes in this case, the officer alleged that he had hired an attorney to appeal. The attorney informed the officer that an appeal had been filed when, in fact, nothing was done. In deciding whether such conduct by an attorney justified granting an appeal nunc pro tunc, we stated, "a policy of extending appeal times on the basis of the fraud or misconduct of a party's own attorney would tend to encourage such abuses, and could not, therefore, be logically supported." *Id.* at 361, 481 A.2d at 1000. As the present case is indistinguishable from *Hentz*, it would seem that the circumstances are not present to justify granting Hughes' petition for review nunc pro tunc. It thus follows that the appeal should be quashed. The question of whether we can apply the clear holding in *Hentz* is clouded by *Larocca* and the latter's discussion concerning the doctrine of "law of the case"[1].

In *Larocca*, a claimant whose appeal was unsuccessful before the Workmen's Compensation Appeal Board wrote a letter to this Court asking for the necessary forms to file an appeal. This letter was received by us within thirty days of the order of the Workmen's Compensation Appeal Board. The claimant then obtained counsel and filed a proper petition for review more than thirty days after entry of the Board's order. The employer filed a motion to quash which was denied by a single judge. Rather than file an application for reconsideration the employer briefed and argued the matter before the court en banc, again raising the question of timeliness. After questioning whether we were prevented from considering the jurisdictional question and stating that the order of the single judge should be binding, we nonetheless went on to consider the question, stating, "[d]ue of the importance of the issue involved here, however, we feel that the interest of judicial economy would be best served by squarely

1. The use of the term "law of the case" in *Larocca* was actually a misuse of that term. As Judge Doyle pointed out in *Farber v. Engle,* 106 Pa.Commonwealth Ct. 173, 525 A.2d 864 (1987), "law of the case" had traditionally been used where an *appellate court* has ruled on a question; that court will normally not reverse that determination on *another appeal on another phase of the case.* While the doctrine applicable in this case is closely related, it is not technically "law of the case" as that term has been defined.

addressing it, *despite the procedural irregularity.*" *Id.* 140 Pa.Commonwealth Ct. at 198, 592 A.2d at 760 (emphasis added). We went on to hold that the claimant had filed a timely appeal, thereby giving us jurisdiction to decide the merits of her claim.

Our discussion in *Larocca,* on the principle of refusing to normally reconsider a prior pre-argument ruling, was premised upon our decision in *Vitale v. Zoning Hearing Board of Upper Darby Twp.,* 63 Pa.Commonwealth Ct. 604, 438 A.2d 1016 (1982). There, the appellee had filed a motion to quash the appeal, arguing that the appellant lacked standing. After that motion was denied in a pre-argument ruling, the appellee again asked that the appeal be quashed. We refused to consider that request, stating:

> It is a general rule that it is improper for a trial judge, absent new evidence, to overrule an interlocutory order by another judge of the same court in the same case.... We adopt the same rule with regard to pre-argument applications filed with this Court. In the interest of judicial economy and efficiency there must be a degree of finality to determinations on pre-argument motions.

*Id.* at 607, 438 A.2d at 1018 (citations omitted).

Another factor in *Larocca* is relevant for our present discussion. As we stated:

> Pa.R.A.P. 123(e) provides that a single judge of an appellate court may 'grant or deny any request for relief which under these rules may properly be sought by application....' It further provides that '[t]he action of a single judge *may* be reviewed by the court.' (Emphasis added.) We have provided a mechanism for this review by means of a petition for reconsideration. *See* Internal Operating Procedures, § 331, 210 Pa.Code § 67.47. When, as here, no petition for reconsideration from an order of a single judge has been filed, that order will normally be considered binding.

*Larocca,* 140 Pa.Commonwealth Ct. at 198, 592 A.2d at 760. In the present case, the Pennsylvania State Police did file a request for reconsideration which was denied following a vote of the entire court. While this would normally strengthen the

argument that we cannot now again consider a question *twice* decided in pre-argument orders, we believe because the question of *subject matter jurisdiction* is involved, specifically the lack thereof, we must consider the question once again.

It is hornbook law that subject matter jurisdiction gives a court the power to decide a controversy. *American Labor Party Case*, 352 Pa. 576, 44 A.2d 48 (1945); *Lashe v. Northern York County School District*, 52 Pa.Commonwealth Ct. 541, 417 A.2d 260 (1980). It is equally well settled that where subject matter jurisdiction does not exist, consent of the parties is incapable of conferring such jurisdiction. *Roberts v. Martorano*, 427 Pa. 581, 235 A.2d 602 (1967); *Local 302, International Association of Fire Fighters v. City of Allentown*, 55 Pa.Commonwealth Ct. 599, 423 A.2d 1119 (1980). In *Pozzuolo Estate*, 433 Pa. 185, 193, 249 A.2d 540, 545 (1969), the court stated, "[n]either by act of the parties *nor by the act of this Court* can jurisdiction be conferred upon a court where jurisdiction is nonexistent." (Emphasis added.) The Supreme court was also careful to point out that this rule applied "only to jurisdiction of the cause of action or subject matter, not to jurisdiction of the person, or jurisdiction based upon procedural matters; as to the latter classes, defects can always be waived." *Ciammaichella Appeal*, 369 Pa. 278, 288, 85 A.2d 406, 411 (1952). In *Lashe*, we held that where the jurisdictional question involved was non-waivable, a court has the *duty* to raise the lack of jurisdiction sua sponte. Finally, the United States Supreme Court stated over a century ago, "Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). The import of all of the above authority is that whenever a court discovers that it lacks jurisdiction over the subject matter or the cause of action *it is compelled to dismiss the matter under all circumstances*, even where we erroneously decided the question in a prior ruling.

We must point out that in so holding, we are not overruling *Larocca*. That portion discussing the rule concerning the finality of pre-argument applications is dicta; nevertheless, we

did go on to consider and resolve the question of whether we had subject matter jurisdiction, and determined that subject matter jurisdiction existed. Furthermore in *Larocca*, we stated that "[w]e have approved this practice even in a case involving a jurisdictional issue. *City of Reading v. Templin*, 88 Pa.Commonwealth Ct. 267, 269, n. 3, 489 A.2d 272, 273, n. 3 (1985)." *Larocca*, 140 Pa.Commonwealth Ct. at 197, n. 1, 592 A.2d at 760, n. 1. This pronouncement, however, is a misstatement. In *Templin*, the City had filed an appeal and the appellee filed a motion to quash which was denied by a single judge. The appellee then filed an application for reargument in the nature of a motion for reconsideration on the original motion to quash. We held that, because we granted reargument, we were not bound by the initial determination. In any event, we can find no authority where the rule first set forth in *Vitale* was used to confer jurisdiction based upon a prior, erroneous determination where jurisdiction over the subject matter was non-existent. Accordingly, we must quash Hughes' appeal.

## ORDER

NOW, December 30, 1992, the appeal in the above captioned matter is quashed.