**Carla LENCOVICH, Petitioner,**

v.

**BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 13, 2003.

Decided Aug. 12, 2003.

Lisa A. Welkey, Pittston, for petitioner.

Denise Miller-Tshudy, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, COHN, Judge, and JIULIANTE, Senior Judge.

COHN, Judge.

This is an appeal by Carla Lencovich from an order of the Department of State, Bureau of Professional and Occupational Affairs (Bureau), State Board of Nursing (Board) requiring Lencovich to submit to a mental and physical examination based on allegations that had been set forth in Paragraph 4 of the Bureau's Petition for Mental and Physical Examination.[1]

The Probable Cause Screening Committee of the Board initially issued an order on April 8, 2002, requiring the examination. On April 23, 2002, Petitioner sought reconsideration before the Board of the April 8 order. On that same date, the Board issued a temporary order staying the examination and scheduling a "probable cause" hearing before a hearing examiner. On September 4, 2002, the hearing examiner upheld the April 8 order requiring the examination, and vacated the stay.

Lencovich then filed a Petition for Review with this Court. The Board filed a motion to quash, alleging that the September 4, 2002 order was not a final appealable order. This Court, in an order dated December 17, 2002, denied the motion, reasoning that the order "disposes of all claims of [Lencovich] relating to the infringement of [Lencovich's] personal property right to be free of any duty to submit to a medical and physical examination...." The Board sought reconsideration of the order, which we denied on January 8, 2003.

---

1. The allegations were:

(a) On one occasion, [Lencovich] threatened to kill herself, ran off into the woods, four hours later after a "manhunt" was initiated she returned home.

...

(c) On another occasion, [Lencovich] threatened to "end her life to make everything go away" after discussing possibly aborting a child she was carrying.

...

(h) In January of 2001, [Lencovich] stated to an individual on the phone that she was mixing Tylenol 3 and Darvocet and starting an IV line into her arm and [that] it would "all be over in 2 hours." Pennsylvania State Police were called to her home and found that the suicide threat appeared to be a hoax.

In its brief, the Board again reasserts that the order appealed is neither final nor collateral. Upon closer examination of the matter, we are persuaded that the Board is correct. As we ruled earlier in the proceedings, the order is not collateral because, for an order to be collateral, it must be separable from the main cause of action, Pa. R.A.P. 313, and the order appealed here *is* the main cause of action, since there has been no other proceeding instituted yet. We adhere to that view.

However, we now conclude, contrary to our prior ruling, that the order is not final. We do so because the statutory scheme does not envision a hearing prior to a licensee's submission to an examination. Rather, when reading Section 14 of The Professional Nursing Law, (Act) Act of May 22, 1951, P.L. 317, *as amended,* 63 P.S. § 224, in context, it is clear that where the agency finds probable cause to order a medical examination, it can compel a licensee to submit to one. However, this provision also provides that, *"After* notice, hearing, adjudication and appeal" in accordance with Section 15 of the Act[2] (which incorporates by reference the adjudicatory provisions of the Administrative Agency Law), the failure of the licensee to submit to the examination shall constitute an admission of the allegations upon which "a default and final order may be entered." We construe this provision to mean that, although one is not given due process *before* undergoing the examination, where the licensee's refusal to undergo the examination results in an adverse consequence, such as a license suspension, the adverse consequence cannot take effect until full due process is afforded (notice, hearing, adjudication and appeal). It is in the context of *that hearing* that the efficacy of the examination order can be challenged. If this were not the case, then any refusal to undergo what the licensee believes is an unjustifiable examination could, in and of itself, be a basis for deeming the licensee medically unfit to practice by "default," resulting in a possible license suspension without providing a chance to challenge the actual basis for that suspension. This would clearly be unconstitutional on the basis of denial of due process.

That does not change the fact, however, that possession of an occupational license is a privilege. *Yurick v. Department of State,* 43 Pa.Cmwlth. 248, 402 A.2d 290 (1979) (osteopathic license); *see also State Dental Council and Examining Board v. Friedman,* 27 Pa.Cmwlth. 546, 367 A.2d 363 (1976) (dental license). In obtaining a nursing license, one agrees to abide by the rules and regulations of the State Board of Nursing and its attendant act. The requirement that a licensee possess a state of mental and physical health that will not impair his or her ability to practice the profession "with reasonable skill and safety to patients,"[3] is a statutory condition of continued licensure. *Accord Galena v. Department of State,* 122 Pa. Cmwlth. 315, 551 A.2d 676 (1988) (requirement of good moral character for medical doctor was an ongoing condition of licensure). To ensure that this requirement is met, the Board can subject a licensee to an examination upon probable cause shown. Thus, any argument that a licensee has a "personal" right to be free of such an examination fails.

Further, it is logical to conclude that due process does not require an immediate appellate review every time a licensing board orders a licensee to submit to a medical examination. Such micromanagement of agency affairs by this Court is not warranted because the licensing boards have an expertise in matters involving the con-

---

**2.** 63 P.S. § 225.

**3.** 63 P.S. § 224(a)(2).

duct of their licensees. Moreover, such a practice is simply not judicially expedient.

■ Having determined that the order was not final, and is not otherwise appealable as of right, we must decide the appropriate remedy here. The finality of an order is a question of subject matter jurisdiction. *Robinson v. City of Philadelphia,* 706 A.2d 1295 (Pa.Cmwlth.1998). In such circumstances, this Court can reverse the decision of a single judge denying a motion to quash, even where reconsideration of that order was sought and denied. *Hughes v. Pennsylvania State Police,* 152 Pa.Cmwlth. 409, 619 A.2d 390 (1992), *petition for allowance of appeal denied,* 536 Pa. 633, 637 A.2d 293 (1993). As we stated in *Hughes,* "whenever a court discovers that it lacks jurisdiction over the subject matter or the cause of action *it is compelled to dismiss the matter under all circumstances,* even where we erroneously decided the question in a prior ruling." *Id.* at 393 (emphasis in original).

Because we believe that the order is not subject to appeal, we now grant the motion to quash.

### O R D E R

NOW, August 12, 2003, the order of December 17, 2002, denying the motion to quash, and the order of January 8, 2003, denying reconsideration of that order, are vacated. The motion to quash is hereby granted and the appeal is quashed.