# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

P.G.S.                                      :
          v.                         :    No. 390 C.D. 2024
                                      :
Suzanne Hendricks, Linda A. Kerns,         :    Argued: April 8, 2025
and Sherri Luchs,                          :
                    Appellants        :

BEFORE:  HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE McCULLOUGH                     FILED: July 8, 2025

Suzanne Hendricks, Linda A. Kerns, and Sherri Luchs (Appellants) are former members of the State Board of Nursing (Board) Probable Cause Screening Committee (Committee),[1] and they appeal from the March 1, 2024 order entered in the Dauphin County Court of Common Pleas (trial court) granting the motion for summary judgment filed by P.G.S. (Appellee). Appellants contend the trial court's order concerning their immunity from suit is appealable as a collateral order and challenge that court's determination that they are not entitled to the protection of quasi-judicial or qualified immunity. After careful consideration, we reverse the trial court's order and remand this case with instructions to the trial court to enter judgment in favor of Appellants.

---

[1] Appellants Suzanne Hendricks and Sherri Luchs are former members of the Committee. Linda A. Kerns remained an active member as of her February 2023 deposition in this case.

# I. Background

The relevant facts and procedural history of this case are as follows. Appellee held a license to practice as a registered nurse in the Commonwealth from April 30, 2002, until October 24, 2018. In March of 2017, an anonymous complaint was filed against her before the Board alleging that she was unable to competently and safely perform her nursing duties. The allegations arose after she reported a case of suspected elder abuse to the local police and discussed with them a secret government organization she referred to as "SWAMP." Appellee claimed that this organization had unauthorized access to hospital databases and that it had hidden sharp containers in the hospital. (Reproduced Record (R.R.) at 97a.)

In February of 2017, Appellee and her counsel were interviewed by an investigator from the Board regarding the allegations. On March 9, 2017, the Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs (Bureau), through a prosecuting attorney, filed with the Board a Petition to Compel Mental and Physical Examination (Petition to Compel) pursuant to Section 14(a)(2) of the Professional Nursing Law (Law).[2] The three-member Committee was then

---

[2] Act of May 22, 1951, P.L. 317, *as amended*, 63 P.S. §§ 211-225.5. Section 14(a)(2) of the Law governs the examination process and provides in relevant part as follows:

> (a) The Board may refuse, suspend or revoke any license in any case where the Board shall find that--
>
> . . . .
>
> (2) **The licensee is unable to practice professional nursing with reasonable skill and safety to patients by reason of mental or physical illness** or condition or physiological or psychological dependence upon alcohol, hallucinogenic or narcotic drugs or other drugs which tend to impair judgment or coordination, so long as such dependence shall continue. In enforcing this clause (2), **the Board shall, upon probable cause, have authority to compel a licensee to submit to a mental or physical examination as designated by it**.

**(Footnote continued on next page…)**

2

composed of Appellants, who reviewed the Petition to Compel and issued an order on March 9, 2017, directing Appellee to submit to an examination with Dr. George E. Woody (Order to Compel) within 60 days. Paragraph 7 of the Order to Compel stated:

> [Appellee's] failure to comply with this Order, except for circumstances beyond h[er] control, shall constitute a violation of a lawful order of the Board [] and an admission of the allegations contained in the Petition to Compel [ ] upon which a Default and Final Order may be entered without the taking of testimony or presentation of evidence. Such Final Order may result in the [Board] taking disciplinary or corrective action against [Appellee] including, but not limited to, license suspension, the imposition of a civil penalty of up to $10,000 per violation, and the costs of investigation.

(R.R. at 38a.) Appellee did not file an appeal from the Order to Compel.

Appellee and her counsel attended an examination with Dr. Woody on May 4, 2017, and provided him with releases permitting him to obtain copies of her medical records in accordance with the Order to Compel. Dr. Woody issued a report

---

> After notice, hearing, adjudication and appeal as provided for in section 15, failure of a licensee to submit to such examination when directed shall constitute an admission of the allegations against him or her unless failure is due to circumstances beyond his or her control, consequent upon which a default and final order may be entered without the taking of testimony or presentation of evidence. . . .

63 P.S. § 224(a)(2) (emphasis added). In turn, Section 15 of the Law provides as follows:

> All suspensions and revocations shall be made only in accordance with the regulations of the Board, and only by majority vote of the members of the Board after a full and fair hearing before the Board. All actions of the Board shall be taken subject to the right of notice, hearing and adjudication, and the right of appeal therefrom, in accordance with the provisions in Title 2 of the Pennsylvania Consolidated Statutes (relating to administrative law and procedure)[.]

63 P.S. § 225.

3

on June 8, 2017, stating that, in his professional opinion, Appellee has a delusional disorder that prevented her from properly fulfilling her nursing duties. (R.R. at 99a.) A Board hearing examiner conducted a hearing on the matter, and the Board issued an order on September 24, 2018, indefinitely suspending Appellee's license.

Appellee appealed from the order to this Court, arguing the Board violated her due process rights by directing her to submit to a mental and physical examination. She further contended that the Board's decision to suspend her license was not supported by substantial evidence. This Court affirmed the Board's order on November 7, 2019, finding that Appellee waived her due process claim by failing to raise it before the Board. As to Appellee's challenge to the evidence supporting her license suspension, we found:

> Dr. Woody based the substance of his June 8, 2017 report, including his proffered medical diagnosis and opinion regarding [Appellee's] fitness to continue working as a nurse, not only upon documentation provided by the Bureau and [Appellee], but also upon his in-person evaluation of [Appellee]. Dr. Woody then expounded upon his report at the October 12, 2017 hearing, providing clarification and additional information to the Hearing Examiner that further buttressed his previously articulated determinations.

> [Appellee], herself, corroborated much of what Dr. Woody had said and written, confirming that she had indeed reported suspected elder abuse to the local police and believed there was a shadowy, government-related group of individuals involved in an amorphous and wide-ranging conspiracy, which she collectively called "SWAMP" who had not only maimed and killed members of her family but had also conducted targeted attacks against some of her patients. It is therefore not surprising that [Appellee's] beliefs, which have begun to affect the manner in which she handles patients, would engender legitimate concerns about her mental well-being and professional abilities. Consequently, there is substantial evidence in the record

4

> supporting the Board's determinations that [Appellee] suffers from a delusional disorder of an unknown provenance and, therefore, she is incapable of practicing the profession of nursing with the necessary level of safety and skill until further evaluation.

*P.G.S. v. Bureau of Professional and Occupational Affairs, State Board of Nursing* (Pa. Cmwlth., No. 1428 C.D. 2018, filed November 7, 2019), slip op. at 9-10.

Appellee initiated the instant action against Appellants by filing a writ of summons in the trial court in March of 2019 alleging state and federal causes of action for the denial of procedural and substantive due process and invasion of her privacy, seeking compensatory and punitive damages. The crux of Appellee's claim is that Appellants deliberately misinformed her of her right to process by indicating in the Order to Compel that her failure to submit to an examination would constitute a violation of the order and an admission of the allegations in the Petition to Compel, upon which a final disciplinary order could be entered without a hearing. (R.R. at 20a-21a.) Appellee maintains that Appellants' action deprived her of any meaningful opportunity to challenge the allegations contained in the Petition to Compel or Appellants' determination of probable cause to order the mental and physical examination.

In their Answer and New Matter filed on December 20, 2021, Appellants denied Appellee was entitled to a hearing prior to her submission to the mental and physical examination and maintained that the language of the Order to Compel is consistent with both the text of 63 P.S. § 224(a)(2) itself and this Court's decision in *Lencovich v. Bureau of Professional & Occupational Affairs*, 829 A.2d 1238 (Pa.

5

Cmwlth. 2003).[3]  (R.R. at 50a, 53a.)  Appellants additionally raised the defense of quasi-judicial immunity "or other immunity for the claims asserted in this action." (R.R. at 53a.)[4]

Appellants testified by deposition, and Sherri Luchs explained that as a Committee member, her "role was to review the information provided [by Commonwealth prosecuting attorneys] to determine if there was enough information in which there was a concern for the public health, welfare, and/or the nursing practice

---

[3]  In interpreting 63 P.S. § 224(a)(2), this Court held in *Lencovich* that, when read in context, the "**statutory scheme does not envision a hearing prior to a licensee's submission to an examination**.  Rather, [] it is clear that where the agency finds probable cause to order a medical examination, it can compel a licensee to submit to one."  829 A.2d at 1240 (emphasis added).  The Court also stated:

> this provision also provides that, "After notice, hearing, adjudication and appeal" in accordance with Section 15 of the Act (which incorporates by reference the adjudicatory provisions of the Administrative Agency Law), the failure of the licensee to submit to the examination shall constitute an admission of the allegations upon which "a default and final order may be entered."  **We construe this provision to mean that, <u>although one is not given due process before undergoing the examination, where the licensee's refusal to undergo the examination results in an adverse consequence, such as a license suspension, the adverse consequence cannot take effect until full due process is afforded (notice, hearing, adjudication and appeal)</u>. It is in the context of that hearing that the efficacy of the examination order can be challenged**.  If this were not the case, then any refusal to undergo what the licensee believes is an unjustifiable examination could, in and of itself, be a basis for deeming the licensee medically unfit to practice by "default," resulting in a possible license suspension without providing a chance to challenge the actual basis for that suspension.  This would clearly be unconstitutional on the basis of denial of due process.

*Id.* (emphases added).

[4] Although Appellee maintains that Appellants raised their "belated" immunity claims for the first time in their December 2023 motion for summary judgment, (Appellee's Brief, at 22, 27), our review of the record does not support her claim.

6

[with each] petition that was in front of us." (R.R. at 219a.) With respect to the probable cause evaluation process, Appellants testified consistently with one another that prosecutors sent them petitions seeking to compel mental and physical examinations of licensees via email in advance of their Committee meetings for consideration. The prosecutors then presented the record petitions to Appellants at their Committee meetings and, if a petition established the necessary probable cause, they would enter an order compelling an evaluation. (R.R. at 216a-18a.) Appellants uniformly testified that they did not draft the language contained in the orders to compel, and instead received the form orders from counsel. (R.R. at 82a, 219-20a, 259a.)

The parties agreed that the issue of whether Appellee's due process and privacy rights were violated presented a legal issue to be determined by the trial court and that if the court found a violation did occur, they would proceed to a bench trial on damages. The parties filed cross-motions for summary judgment on December 22, 2023, requesting the trial court to determine, as a legal matter, whether Appellants violated Appellee's due process or privacy rights. Appellants additionally contended that they are entitled to quasi-judicial immunity and/or to qualified immunity[5] as a complete defense to Appellee's claims.

---

[5] The doctrine of judicial immunity was developed to protect the public's interest in ensuring that certain individuals in society are able to perform their important functions without apprehension of personal consequences. *N.W.M. Through J.M. v. Langenbach*, 316 A.3d 7, 23 (Pa. 2024). "Quasi-judicial immunity" has been extended to state agency officials performing adjudicative actions that are the functional equivalent of judicial work. *Id.* With respect to qualified immunity, this Court applies that doctrine to state officers when considering federal law violations and will be found if an official's conduct does not violate clearly established rights which a reasonable person should have known. *Lancie v. Giles*, 572 A.2d 827, 829 (Pa. Cmwlth. 1990).

The trial court heard oral argument on the cross-motions on January 25, 2024, and took the matter under advisement. On March 1, 2024, it issued an opinion and order (March Order) granting Appellee's motion for summary judgment and denying Appellants' cross-motion. The trial court entered judgment in favor of Appellee and scheduled a bench trial to determine damages in April of 2024. In rejecting Appellants' immunity defenses, the trial court stated:

> We find that [Appellants] are not entitled to quasi-judicial immunity. Initially, the Order to Compel was entered without providing [Appellee] any opportunity for a hearing on the Petition to Compel, in accordance with the relevant statute. As such, the entry of the Order to Compel cannot be deemed a quasi-judicial adjudicatory function because of the lack of procedural safeguards before the Order to Compel was entered. Additionally, although the statute sets forth procedural safeguards for [Appellee] to follow if she wanted to contest the underlying basis for the entry of the Order to Compel, the Order to Compel itself does not properly advise [Appellee] of her rights to refuse the examination and request a hearing on the Petition to Compel. Since [Appellants] signed the Order that gave [Appellee] no real choice but to attend the examination before she had any opportunity to be heard, this cannot be considered a quasi-judicial function. For these reasons, we find that [Appellants] are not entitled to quasi-judicial immunity on any of [Appellee's] claims.

> [Appellants] next argue that they are entitled to qualified immunity on [Appellee's] federal claims. . . . In the instant matter, [Appellants] derived their authority to issue Orders compelling licensed nurses to undergo mental and physical examinations from 63 P.S. § 224(a)(2). As such, they are presumed to know the dictates of that statute, which requires an opportunity to be heard before refusing an examination results in the admission of the underlying facts that led to the Order to Compel. Since this right is clearly

8

> established in the statute governing [Appellants'] conduct, and we found that [Appellants] violated [Appellee's] rights under this statute, [Appellants] are not entitled to qualified immunity.

(Trial Court Opinion, 3/01/24, at 8-9) (case citation omitted).

Appellants filed a notice of appeal on April 1, 2024, challenging the trial court's decision that they are not entitled to quasi-judicial or qualified immunity. Appellants additionally filed an application requesting that the trial court certify its March Order for interlocutory appeal.[6] The trial court issued an order on April 4, 2024, denying Appellants' application and staying the trial pending this Court's disposition of the immunity issue.

Appellee filed a motion to quash the appeal in this Court contending that it is interlocutory and unappealable. We issued a *per curiam* Order on May 31, 2024, directing the parties to address the appealability of the March Order in their principal briefs.

## II. Discussion

On appeal, Appellants challenge the trial court's determination that they are not entitled to quasi-judicial or qualified immunity. Appellee, however, maintains that the appeal should be quashed, because the denial of summary judgment on the basis of immunity is a non-appealable interlocutory order. Appellants respond that the order is appealable under the collateral order doctrine.[7]

### A. Collateral Order Doctrine

---

[6] Rule 312 provides that "[a]n appeal from an interlocutory order may be taken by permission pursuant to Chapter 13 (interlocutory appeals by permission)." Pa.R.A.P. 312.

[7] "With regard to jurisdictional questions and other questions of law, our standard of review is *de novo*, and our scope of review is plenary." *Com. ex rel. Kane v. Philip Morris, Inc.*, 128 A.3d 334, 340 n.5 (Pa. Cmwlth. 2015).

We begin by addressing the appealability of the trial court's March Order, as it directly impacts our jurisdiction over this case. *Smith v. Ivy Lee Real Estate LLC*, 326 A.3d 1064, 1069 (Pa. Cmwlth. 2024). "In Pennsylvania, an immunity defense does not, in and of itself, entitle a litigant to appellate review of an interlocutory order." *Gwiszcz v. City of Philadelphia*, 550 A.2d 880, 881 (Pa. Cmwlth. 1988). The collateral order doctrine permits an appeal as of right from a non-final collateral order if the order satisfies the three requirements set forth in Pennsylvania Rule of Appellate Procedure 313(b)—separability, importance, and irreparability. *Shearer v. Hafer*, 177 A.3d 850, 855 (Pa. 2018). Rule 313 provides:

> (a) **General Rule**. An appeal may be taken as of right from a collateral order of a trial court or other government unit.
>
> (b) **Definition**. A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(a), (b).

Therefore, an order is collateral under this rule if it satisfies the following three prongs: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that, if review is postponed until final judgment in the case, the claim will be irreparably lost. Pa.R.A.P. 313(b). The Pennsylvania Supreme Court has concluded that, "as a means to reinforce and support the final order rule . . . the collateral order doctrine must be narrowly construed, and, before application thereof, every one of its three prongs must be clearly present, especially considering that a party may seek permission to appeal an interlocutory—*i.e.*, non-final—order pursuant to Pennsylvania Rule of Appellate Procedure 312, Pa.R.A.P. 312." *J.C.D. v. A.L.R.*, 303 A.3d 425, 430

(Pa. 2023). "Where an order satisfies Rule 313's three-pronged test, an appellate court may exercise jurisdiction even though the order is not final." *Shearer*, 177 A.3d at 857.

Regarding the first prong, "an order is separable from the main cause of action if it can be resolved without an analysis of the merits of the underlying dispute and if it is entirely distinct from the underlying issue in the case." *Id.* at 858. "This Court has adopted a **practical separability analysis** recognizing that some potential interrelationship between merits issues and the question sought to be raised in the interlocutory appeal is tolerable." *Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 372 (Pa. 2021) (emphasis added). As to the second prong, "this Court has examined the importance of the right involved by weighing the interests that immediate appellate review would protect against the final judgment rule's interests in efficiency through avoiding piecemeal litigation." *Id.* "Further, the rights involved must implicate interests deeply rooted in public policy and going beyond the particular litigation at hand." *Shearer*, 177 A.3d at 857. The third prong concerning irreparability requires that "the matter must effectively be unreviewable on appeal from final judgment." *J.C.D.*, 303 A.3d at 431.

Our Supreme Court's decision in *Brooks* is instructive. In that case, the plaintiff was injured when she walked into an unmarked glass wall while exiting the Family Court building in Philadelphia. The plaintiff sued the Family Court, which moved for summary judgment on the basis of sovereign immunity arguing that the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521-8527, barred the plaintiff's negligence action. *Brooks*, 259 A.3d at 361. The trial court denied the Family Court's motion for summary judgment, the Family Court appealed, and this Court quashed the appeal, finding that the trial court's order did not meet the requirements of the collateral order doctrine.

11

Our Supreme Court disagreed and reversed this Court's decision. In determining the immunity issue was separable from the main cause of action, the *Brooks* Court explained that "it is a purely legal question that can be resolved by focusing on the Act and does not necessitate an examination of the merits of the plaintiff's negligence claim." *Id.* at 372. It further concluded that, because the right to a sovereign immunity defense is deeply rooted in public policy, the issue was too important to defer resolution until after final judgment of the negligence action. *Id.* The Court additionally held that the Family Court's ability to invoke sovereign immunity as a defense would be lost if appellate review were delayed until after final judgment. *Id.* at 373-74. In doing so, the Court noted that the United States Supreme Court has also held that orders denying immunity are immediately appealable as "collateral orders because the entitlement is an **immunity from suit** rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 374 (citing *Mitchell v. Forsyth*, 472 U.S. 511 (1985) (emphasis added)).

Likewise, here, employing a practical separability analysis, *see id.* at 361, the issue of whether Appellants are entitled to immunity from this lawsuit is a purely legal question separate from the underlying merits of Appellee's due process and right to privacy claims. Specifically, the applicability of quasi-judicial immunity turns on whether Appellants were acting in a capacity that is functionally equivalent to a judicial officer when they issued the Order to Compel and can be analyzed without examination of the underlying dispute.

Regarding the importance prong, the issue of whether individual Committee members can be held personally liable for allegations arising from their issuance of orders to compel mental and physical examinations in the context of

12

nursing license suspension proceedings before the Board implicates broad public policy concerns extending beyond this particular case. Thus, the second prong of the collateral order doctrine is satisfied.

Lastly, as in *Brooks*, delaying review of the March Order until after final judgment would cause Appellants to irreparably lose their claimed entitlement to immunity from suit, as it would provide protection from the cost and burden of litigating this lawsuit itself, not from a final judgment. Therefore, the third prong of the collateral order analysis is also met. Accordingly, because we conclude that we may exercise appellate review of Appellants' immunity issues pursuant to the collateral order doctrine, we address them on the merits.

## B. Judicial and Quasi-Judicial Immunity[8]

The principle that judges must be free to perform their judicial function without apprehension of personal liability in civil actions has deep common law roots. *N.W.M. Through J.M.*, 316 A.3d at 23. This is because the public has an interest in judges exercising their discretion freely and independently, without concerns about potential individual consequences or the distraction of litigating a lawsuit. *See id.* The United States Supreme Court has explained with respect to judicial immunity that,

> [l]ike other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. Rather, our cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's

---

[8] "Whether a particular immunity applies is a question of law as to which our standard of review is *de novo* and our scope of review is plenary." *Feldman v. Hoffman*, 107 A.3d 821, 826 (Pa. Cmwlth. 2014).

13

judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

. . . . Whether an act by a judge is a "judicial" one [relates] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity[.]

*Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (citations omitted).

With regard to quasi-judicial immunity, Pennsylvania recognizes this doctrine as applicable to state administrative agency officials who regularly perform quasi-judicial functions. *Petition of Dwyer*, 406 A.2d 1355 (Pa. 1979). In *Petition of Dwyer*, our Supreme Court extended quasi-judicial immunity to state officials who routinely engage in adjudicative actions, including issuing subpoenas, initiating enforcement proceedings, making evidentiary rulings, and hearing adjudications. In doing so the Court noted these officials were performing the functional equivalent of judicial work and stated:

The modern era has ushered into our system of jurisprudence men and women who, in administrative agency proceedings, performed adjudicatory functions much the same as those performed by judges. **These men and women are called upon to exercise their discretion in applying statutes, rules, and often case law governing the particular administrative agency area to the facts and circumstances of each proceeding**. The question has recently arisen, as it has here, as to the propriety of adoption of a "quasi-judicial" immunity to preserve the independence of these administrative agency officials in rendering their decisions.

*Id.* at 1358 (emphasis added). In adopting this form of immunity, the Court reasoned that "quasi-judicial immunity, as with judicial immunity, is necessary to ensure that

14

agency adjudicatory decisions will be rendered independently, free from external pressures, harassment or intimidation." *Id.* at 1359.

Since *Petition of Dwyer*, Pennsylvania courts have extended quasi-judicial immunity to "those serving clear adjudicative functions [including]: administrative law judges who preside over and adjudicate a regulatory matter in the manner of a judge; a judicial law clerk who works within the judicial chambers directly assisting the judge in the judge's adjudicative role; and a child custody officer who directly assists the judge by presiding over a conference and issuing a report and recommendation for the judge's use." *N.W.M. Through J.M.*, 316 A.3d at 28. In holding that a child custody conference officer is entitled to the protection of judicial immunity, this Court stated:

> The doctrine of judicial immunity is applicable not only to judges but to those who perform judicial functions and act as an arm of the court. . . . [J]udges are immune from liability when the judge has jurisdiction over the subject matter before him and he is performing a judicial act. Judges are **absolutely immune from liability for damages when performing judicial acts, even if their actions are in error or performed with malice, provided there is not clear absence of all jurisdiction over the subject matter and person**.

*Logan v. Lillie*, 728 A.2d 995, 998 (Pa. Cmwlth. 1999) (emphasis added).

Here, Appellants, after considering the Petition to Compel submitted to the Board by the Commonwealth's prosecuting attorney, exercised their discretion in determining that it was supported by adequate probable cause to enter the Order to Compel. Appellants issued the Order to Compel in accordance with the quasi-judicial authority granted to them by the legislature under 63 P.S. § 224(a)(2). The record makes clear that Appellants, in taking these actions, were acting solely in their official quasi-judicial role as members of the Committee and as an arm of the Board. There is no evidence of record whatsoever to indicate that they were acting in their individual

15

capacities in rendering their probable cause determination. Instead, in making probable cause determinations and issuing orders applying statutorily defined criteria, they performed classic examples of "function[s] normally performed by a judge." *See Mireles*, 502 U.S. at 11. Additionally, Appellants consistently and unequivocally testified that they played no role in drafting the language of the Order to Compel and that this was a standard form document provided by the Board's legal representative.

Based on the foregoing, we conclude that Appellants were acting within their quasi-judicial authority when issuing the Order to Compel and that Appellee's action for money and punitive damages against them in their personal capacities is barred from further litigation. We also note that Appellee was represented by counsel throughout the license suspension process and that it was counsel's responsibility to advise her of the potential legal ramifications of refusing to submit to the mental and physical examination.[9] Accordingly, we reverse the trial court's order and remand this case with instructions to the trial court to enter judgment in favor of Appellants.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Covey and Judge Fizzano Cannon did not participate in the decision for this case.

---

[9] Because we agree with Appellants that they are entitled to quasi-judicial immunity, we need not address their issue concerning qualified immunity.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

P.G.S.                                      :
       v.                                 :   No. 390 C.D. 2024
                                :
Suzanne Hendricks, Linda A. Kerns,         :
and Sherri Luchs,                          :
                 Appellants           :

## *ORDER*

AND NOW, this 8th day of July, 2025, the March 1, 2024 order of the Court of Common Pleas of Dauphin County (trial court) in the above-captioned matter is REVERSED, and the case is REMANDED to the trial court with instructions to enter judgment in favor of Suzanne Hendricks, Linda A. Kerns, and Sherri Luchs.

       Jurisdiction relinquished.

 

                                   _____
                                   PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

P.G.S. : 
 : 
     v. : No. 390 C.D. 2024
 : Argued: April 8, 2025
Suzanne Hendricks, Linda A. Kerns, : 
and Sherri Luchs, : 
          Appellants : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE STACY WALLACE, Judge
             HONORABLE MARY HANNAH LEAVITT, Senior Judge

DISSENTING OPINION
BY SENIOR JUDGE LEAVITT        FILED:

The Court of Common Pleas of Dauphin County's (trial court) order of March 1, 2024, granted summary judgment to P.G.S. on the merits of her Section 1983 action[1] and denied the summary judgment motion filed by Suzanne Hendricks, Linda A. Kerns, and Sherri Luchs (collectively, Former Board Members), who formerly served on the State Board of Nursing (Nursing Board).[2] The majority holds that the part of the trial court's order denying summary judgment to Former Board

---

[1] 42 U.S.C. §1983. It states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

*Id.*

[2] Former Board Members served on the Nursing Board's Probable Cause Screening Committee.

Members is appealable as a collateral order. Because this part of the trial court's order cannot be separated from the remainder of the order, it is not appealable as a collateral order. With respect, I dissent.

The collateral order doctrine permits an appeal as of right from a non-final order if the order can be separated from the main cause of action; the order involves a right too important to deny immediate review; and the postponement of review to final judgment will cause the claim to be irreparably lost. *See* PA.R.A.P. 313.[3] The order appealed to this Court by Former Board Members does not meet these prerequisites.

Most importantly, Former Board Members' claim to quasi-judicial immunity cannot be separated from P.G.S.'s underlying cause of action asserting a denial of her constitutional rights. To find otherwise, the majority relies on *Brooks v. Ewing Cole, Inc.*, 259 A.3d 359 (Pa. 2021). There, the plaintiff filed a negligence action after walking into an unmarked glass wall of the Family Court building. The Supreme Court ruled that the common pleas court's order denying summary judgment on the Family Court's defense of sovereign immunity was appealable as a collateral order. *Brooks* is distinguishable. Because the determination that the Family Court was a Commonwealth party entitled to sovereign immunity did not require an inquiry into the underlying negligence action, the immunity issue was

---

[3] It states:

> (a) General Rule. An appeal may be taken as of right from a collateral order of a trial court or other government unit.
>
> (b) Definition. A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

PA.R.A.P. 313.

MHL-2

separable from the main cause of action. By contrast, here, we consider quasi-judicial immunity.[4]

Whereas sovereign immunity is an absolute defense, quasi-judicial immunity requires an intensive factual inquiry. First, this immunity is available only "in the absence of allegations of bad faith or corruption" by state officials. *Petition of Dwyer*, 406 A.2d 1355, 1360 (Pa. 1979) (*Dwyer*). Second, quasi-judicial immunity depends on whether the actions complained of were done in performance of an adjudicatory function. The hallmarks of an adjudicatory function include "the presence and exercise of discretionary decision-making authority (i.e., applying the law, rules, and regulations to the factual matrix of a given case) *as well as the existence of procedural safeguards in the administrative proceeding* similar to the safeguards afforded at a judicial proceeding (e.g., notice, hearing, right to cross-examine witnesses, etc.)." *Id*. (emphasis added).

P.G.S.'s Section 1983 action asserts that the *ex parte* order of the Nursing Board to compel her to undergo an invasive physical and mental health examination, without giving her an opportunity to challenge that order in an administrative hearing, violated her constitutional rights to privacy and due process. The defense of quasi-judicial immunity requires an inquiry into whether the order to compel P.G.S. to undergo an examination was issued with "procedural safeguards" that are "similar to the safeguards afforded at a judicial proceeding[.]" *Dwyer*, 406 A.2d at 1360. Stated otherwise, the question of quasi-judicial immunity is inextricably entwined with the question raised in the main action: whether the order

---

[4] Former Board Members rely on cases that established the principle of judicial immunity. *See, e.g.*, *Stump v. Sparkman*, 435 U.S. 349 (1978) (holding that a state court judge is immune from liability under Section 1983 unless he has acted in absence of jurisdiction). Former Board Members are not entitled to judicial immunity. They were members of the executive branch of state government when they took the action complained of in P.G.S.'s Section 1983 complaint.

authorized by Former Board Members comported with due process. Simply, the trial court's order denying the defense of quasi-judicial immunity cannot be separated from the main cause of action and, thus, is not a collateral order. PA.R.A.P. 313(b).

Likewise, the question of whether Former Board Members are entitled to quasi-judicial immunity will not be irreparably lost should appellate review be deferred until the trial court enters final judgment. As noted by the trial court, upon completion of a brief hearing on damages, final judgment can be entered, and all issues, including immunity, will be ready for appellate review. Stated otherwise, the trial court's denial of summary judgment fails the "irreparably lost" prong under PA.R.A.P. 313(b).

Indirectly, the majority reverses the trial court's order on the merits of the underlying action, which issue is not before this Court. Indeed, the majority's discussion on due process illustrates that the trial court's order denying summary judgment to Former Board Members cannot be separated from the main cause of action. Further, I disagree with the majority's rationale on this point.

The majority concludes that Section 14(a)(2) of the Professional Nursing Law[5] does not envision a hearing prior to a licensee's submission to an examination, citing *Lencovich v. Bureau of Professional and Occupational Affairs*, 829 A.2d 1238 (Pa. Cmwlth. 2003).[6] However, in *Lencovich*, the licensee did receive a hearing on the order to compel the examination before attending the examination. In *Lencovich*, the licensee sought reconsideration of the Nursing Board's order to compel her to undergo mental and physical examination, which triggered a stay of the order and a "probable cause" hearing. *Id*. at 1239. After this

---

[5] Act of May 2, 1951, P.L. 317, *as amended*, 63 P.S. §224(a)(2).

[6] The discussion in *Lencovich* on the procedures provided in Section 14(a)(2) of the Professional Nursing Law is *obiter dictum*.

hearing, the hearing examiner upheld the order to compel, and the licensee appealed to this Court. We quashed the appeal because the Nursing Board's order was not final or otherwise appealable as of right. *Lencovich*, 829 A.2d at 1241.

Former Board Members argue that P.G.S. had the "option," as in *Lencovich*, to seek reconsideration of the Nursing Board's order to compel, but she decided not to exercise that option. Former Board Members Brief at 48, n.15. In the alternative, Former Board Members contend that P.G.S. could have refused the examination, which would have "the allegations in the petition to compel deemed admitted." *Id*. at 47. They argue that at the suspension hearing based upon the admitted allegations, she could challenge the order to compel.

Former Board Members did not advise P.G.S. of either option in their order to compel P.G.S. to undergo the examination. President Judge Cohn Jubelirer observed in *P.G.S. v. Bureau of Professional and Occupational Affairs, State Board of Nursing* (Pa. Cmwlth., No. 1428 C.D. 2018, filed November 7, 2019) (Cohn Jubelirer, P.J., concurring) (unreported), slip op. at 3 n.3, that "if the [Nursing] Board does have a procedure for a licensee to receive a due process hearing prior to attending a mental and physical exam, it would be helpful for the Board to provide notification." This raises the question of whether Former Board Members acted "in bad faith" by not providing this notification to P.G.S., and mere allegation of bad faith precludes quasi-judicial immunity. *Dwyer*, 406 A.2d at 1360.

Former Board Members do not identify the statute or regulation that authorizes, upon request, a probable cause hearing before attendance at a mental and physical examination can be compelled. President Judge Cohn Jubelirer also observed that

> [t]he [Nursing] Board represented at argument before this Court that there is a procedure through which P.G.S. could have

> challenged the order granting the Petition to Compel; however, when questioned, counsel was unable to describe that procedure. I do not understand our opinion in *Lencovich*, where the licensee did receive a due process hearing before the Board, as justifying a denial of a request for a hearing, if made.

*P.G.S.*, slip op. at n.3. Likewise, here, the hearing "option" supposedly declined by P.G.S. has not been specified by Former Board Members.

The trial court has issued a judgment on the merits of P.G.S.'s civil rights claim, but Former Board Members did not appeal this order.[7] By limiting their appeal to the denial of their quasi-judicial immunity defense, Former Board Members avoid appellate review of the trial court's order on the legal merits of P.G.S.'s Section 1983 claim. The important issue of what due process requires before a licensee can be required to attend an invasive physical and mental examination warrants a direct, and robust, appellate review by this Court. However, the majority's decision forecloses this review. Indeed, appellate review of the "main cause of action" will be "irreparably lost," which turns the collateral order principle on its head. *See* PA.R.A.P. 313(b) (authorizing immediate review of separable collateral order where otherwise "the claim will be irreparably lost.").

I would quash Former Board Members' appeal because the trial court's March 1, 2024, order is not appealable as a final order or as a collateral order.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[7] The only matter outstanding is a hearing, expected to take no more than one day, on the amount of P.G.S.'s damages. The question of whether Former Board Members should be relieved of this brief evidentiary hearing is not a matter "too important" to deny immediate review. PA.R.A.P. 313(b).

MHL-6